## AYCOCK v. O'BRIEN.

Circuit Court of Appeals, Ninth Circuit.
October 29, 1928.

No. 5501.

Troy Pace and H. L. Arterberry, both of Los Angeles, Cal. (Palmer, Davis & Scott, of Washington, D. C., and James, Pace, Smith & Younkin, of Los Angeles, Cal., of counsel), for appellant.

Samuel W. McNabb, U. S. Atty., and Emmett E. Doherty and Ignatius F. Parker, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before GILBERT, RUDKIN, and DIE-TRICH, Circuit Judges.

DIETRICH, Circuit Judge. Acting under the provisions of sections 3929 and 4041, R. S. U. S. (39 USCA §§ 259, 732), the Postmaster General on December 31, 1927, issued a "fraud order" of the usual form, forbidding the postmaster at Los Angeles to pay money orders or to deliver letters addressed to Aycock Medical Institute, Aycock Medicine Combany, Aycock Medical Company, and Charles F. Aycock, or their officers or agents, at Los Angeles. The order was issued pursuant to a finding by the Solicitor of the Department, made after a hearing at which the parties named appeared and adduced evidence, that these parties were fraudulently using the mails in the promotion of sales to the public of two "patent medicines," called Tuberclecide and Metablitone represented to be efficacious in the cure of tuberculosis and other maladies. Feeling aggrieved by the order, appellant, Charles F. Aycock, whose interests, apparently to a greater extent than those of any other person, were affected thereby, brought this suit to enjoin its enforcement, and, being denied relief by the court below, he brings this appeal.

While within a limited range courts of equity will grant relief against orders of this character, it is well settled that they will not interfere where there has been no mistake of law, a fair hearing has been accorded, and the findings of the administrative officers upon issues of fact are supported by substantial evidence. In People's United States Bank v. Gilson et al., 161 F. 286, 290, the Circuit Court of Appeals of the Eighth Circuit, after reviewing the decided cases, said: "In a doubtful case within his jurisdiction in the absence of fraud or a gross mistake of fact, where there is some evidence which is satisfactory to the Postmaster General to sustain a fraud order, his decision of the question of fact upon which the order is founded is conclusive, and it will not be reviewed by the courts." See, also, New v. Tribond Sales Corp., 57 App. D. C. 197, 19 F.(2d) 671; Smith v. Hitchcock, 226 U. S. 53, 33 S. Ct. 6, 57 L. Ed. 119; U. S. ex rel. Milwaukee Social Democratic Pub. Co. v. Burleson, 255 U. S. 407, 413, 41 S. Ct. 352, 65 L. Ed. 704;

818

Leach v. Carlile, 258 U. S. 138, 42 S. Ct. 227, 66 L. Ed. 511.

■ Upon an examination of the voluminous evidence before the court below, which is substantially the same as the record upon which the order was made, we are clearly of the opinion that the case falls far within the range of this last-cited decision, and is readily distinguishable from American School of Magnetic Healing v. McAnnulty, 187 U. S. 94, 23 S. Ct. 33, 47 L. Ed. 90, upon which appellant relies. The advertising literature sent out by plaintiff and his companies leaves no doubt that it was intended to convey and does convey the impression that the two medicines, used in conjunction, constitute a specific cure, particularly for consumption or pulmonary tuberculosis. The very term "Tuberclecide" implies destruction of the bacillus or active organism of the disease; but, if we disregard the name, we find the printed propaganda artfully phrased to appeal to the afflicted and persuade them that an efficacious remedy for the dread disease had at last been found.

Appellant, who claims to be the discoverer of the secret formula, is not a physician, is without scientific training, and has such general education only as is afforded in the public schools. The technique and character of the appeal made in the printed literature sent out to sufferers are suggested, though not fully disclosed, by the following excerpts from the first and second pages, headed "Salutatory," of a booklet of 40 pages, much of which consists of testimonials:

"The greatest inventions of modern times that have benefited mankind have been the children of the brain of the lowly born and obscure. The greatest man the world ever produced was the child of lowly parents, and, as though God ordained, this wonderful remedy for the greatest plague the world has fought for centuries, is the product of a brain practically unknown to science or medicine. We do not claim for TUBERCLE-CIDE an infinite conception but we do claim and can prove beyond question that it has accomplished more than science, medical research and human effort has heretofore achieved. And though our proclamation may for a time go unheeded, the whole world will eventually acknowledge it as a remedy for tuberculosis. * * * No one can decry its merits, for hundreds have been rescued, even at the brink of the grave. * * * The United States government is doing everything possible to jail the fakers and those dealing in fake cures, but here is a company that has been using the United States mails for over seventeen years, and if its claim were not substantiated it would have been put out of business and prosecuted long ago. Can we authenticate or establish confidence in TUBERCLECIDE with stronger predication of our honesty and the merits of its remedy? * * * Many so-called cures have sprung up since TUBERCLECIDE was discovered but all have proven worthless and been discarded except TUBERCLECIDE. It has stood the acid test for eighteen years. * * * It is the discovery of Charles F. Aycock of a remarkable remedy, * * * and now his great ambition is to aid suffering humanity, not by publishing his formula for charlatans to steal, improperly concoct and defraud the public, but by collecting a nominal fee from those who can afford to pay it in order that he may treat the poor free."

It appears from the testimony that the fee thus referred to is $25. There follows a lengthy statement, well designed to appeal to the credulity, especially of sufferers who have been advised by regular physicians that there is no known specific remedy for the disease, and other matter, in addition to the testimonials.

In giving his testimony before the Solicitor, upon cross-examination appellant stated that he himself had been cured of tuberculosis by Tuberclecide; that he had never analyzed the medicine, and did not think he was capable of so doing; that he was not a chemist. He further stated:

"Chemists might analyze but they cannot find all the ingredients where the materials have gone through some other process, but you cannot always get out by analysis just what has been put in; all I do know is that I got the six ingredients and put them in a bottle together and I got this result and that is all I know. I am like Jesus Christ opening the eyes of the blind and when critics asked how it was done he said: 'I do not know, I was blind but now I see.' That is all I can say. I took it and got well. Others took it and got well. That is all I know, * * * I do not want to state what different substance in Tuberclecide it is that costs $32 an ounce. I do not want to state what the ingredients are or whether Tuberclecide has gold in it. I do not want to give the formula away. Well, I do put gold in Tuberclecide. * * * Tuberclecide is just a coined word of mine, just means kills the tubercles and when I first got to using it I thought it would kill the tubercles but I changed my mind after using it. I only think it helps nature to

overcome the trouble and build up the system. * * * I honestly believe that I have a preparation here which will cure persons in advanced stages of tuberculosis and if I did not so believe I would quit."

"There is no secret part of Metablitone that I am not willing to give; if you must know there is rattlesnake venom in the formula; sometimes I do not put it in the capsules, but if not I put it in the tonic. It is all the tuberculosis treatment, but I will say that where I put out Metablitone to people who are not tubercular I do not put the venom in it. * * * I would not say that Tuberclecide is a specific for tuberculosis in any form; I have believed it was a specific for tuberculosis of the lungs, but I have not believed it for a long time and have not so represented it. I found out that it was not a specific, meaning that people do not absolutely get well by its use alone, two or three years after I started in Los Angeles in 1909."

We do not attempt to go further in disclosing the nature and scope of the record, except to say that as bearing upon the question of the weight to be given to appellant's reiterated assertions of his good faith and of his belief in the efficacy of the remedies, the Solicitor had before him evidence tending to impeach his moral integrity. We think the record abundantly supports the administrative finding that false representations were fraudulently made.

▮ One other question remains for consideration. It is urged that the Postmaster General was concluded by a judgment adverse to the government, rendered by the United States District Court for the Southern District of California in December, 1916, in a criminal case in which by information the Tuberclecide Company, a corporation, was charged with a violation of what is known as the Food and Drugs Act (34 Stat. 768), as amended by the Act of August 23, 1912 (37 Stat. 416), 21 USCA §§ 9, 10, in shipping from Los Angeles to Phœnix, Ariz., a package containing a bottle of Tuberclecide and a bottle of Metablitone, which were misbranded, in that certain statements upon the labels and wrappings were false, etc. It appears that by stipulation that cause was tried without a jury, and, after hearing the evidence, the court found against the government and dismissed the information.

By both sides cases are cited upon the general subject of the effect by way of judicial estoppel of a judgment in a criminal case when invoked in a subsequent civil action between the same parties. In different aspects the question was considered in the following, among other, cases: Coffey v. United States, 116 U. S. 436, 6 S. Ct. 437, 29 L. Ed. 684; Stone v. United States, 167 U. S. 178, 17 S. Ct. 778, 42 L. Ed. 127; United States v. Schneider (C. C.) 35 F. 107; U. S. F. & G. Co. v. United States (C. C. A.) 150 F. 550; Chin Kee v. United States (D. C.) 196 F. 74; Kusnir v. Pressed Steel Car Co. (D. C.) 201 F. 146; Sanden v. Morgan (D. C.) 225 F. 266; United States v. Salen (D. C.) 244 F. 296. We do not attempt to analyze these decisions, for the purpose of determining under what circumstances generally the principle of estoppel may be invoked, for we think that under no view is it applicable here. If we assume, without deciding, that the record discloses that the Tuberclecide and Metablitone which were sold in 1916 by the defendant in the criminal case are the same as the remedies now advertised by the plaintiff, and that the labels and wrappers there under consideration made the same representations which appellant and his companies now make, we are nevertheless of the opinion that, taking the widest latitude recognized in any decided case, res adjudicata is not shown.

Not only are the parties different, but in the 11 years which have elapsed material conditions affecting one of the essential elements of the offense charged in the criminal case, and the wrongdoing here made the basis of the order, may have changed. If, as by appellant we are invited to do, we examine the opinion in that case we find that the court expressly declined to find upon the question whether the medicines were of any remedial value. The decision was put upon the sole ground that it was not shown beyond a reasonable doubt that the defendant or its agents acted in bad faith, or did not believe that the representations were true, and that therefore there was wanting proof of fraudulent intent.

But in the 11 years which have since elapsed the scientific world has been anxiously and diligently seeking a remedy for tuberculosis, and if by scientific experimentation and observation a cure has not been discovered, it still may be true that progress has been made in eliminating as futile treatments and drugs which 11 years ago there may have been some reason to believe would be found to have efficacy. Hence, even if the parties were the same—if, to be specific, it were assumed that appellant here was the defendant in the criminal case—it might still be true that representations then made in good faith would, if now made in the light of greater scientific knowledge, and in the light

of greater experience in the use of these medicines themselves, be wholly inconsistent with the theory of good faith or any honest belief in their correctness.

This is strikingly illustrated in appellant's own testimony, if we take it as true, when he says that he once believed that his medicine was a specific for tuberculosis of the lungs, but he does not so believe now. In short, the misconduct now complained of is not the same as the misconduct charged in the criminal case, and hence identity of subject-matter is wanting. And it is further seen that the mere fact that the present parties may in a proprietary way have succeeded to the interests of the Tuberclecide Company, the defendant in the criminal case, is not sufficient to establish identity or privity of the parties. The criminal charge involved the element of fraudulent intent, and that is true of the fraud order proceeding; but intent is personal, and in respect to the same transaction one person may act with a fraudulent intent, while another acts innocently and in good faith.

The decree of dismissal should be affirmed; and it will be so ordered.