## LUNDE ARMS CORP. v. STANFORD
### No. 14038.

United States District Court
S. D. California, Central Division.
Sept. 5, 1952.

See also, D.C., 105 F.Supp. 486.

Dunlap, Holmes, Ross & Woodson, Pasadena, Cal., for plaintiff.

Walter S. Binns, U. S. Atty., Clyde C. Downing, Max F. Deutz, Asst. U. S. Attys., Los Angeles, Cal., for defendant.

BYRNE, District Judge.

The plaintiff manufactures, sells and ships by United States mail novelty pistols which combine the features of a "cap pistol" and a "BB gun". The defendant is the Postmaster of Alhambra, California, and he has refused to accept the plaintiff's product for delivery through the United States mails on the ground that the pistols are firearms within the meaning of 18 U.S.C.A. § 1715, which provides:

"Pistols, revolvers, and other firearms capable of being concealed on the person are nonmailable and shall not be deposited in or carried by the mails or delivered by any postmaster, letter carrier, or other person in the Postal Service."

The plaintiff seeks a declaratory judgment determining its product not to be nonmailable and for an injunction to restrain the defendant from refusing to accept it for mailing.

The defendant has resisted the action on the grounds: (1) That the Postmaster General, whose official residence is in the District of Columbia, is an indispensable party; (2) that the plaintiff's product is in fact a firearm within the meaning of 18 U.S.C.A. § 1715, supra.

Until 1947, the question of when a superior officer was an indispensable party to a suit instituted against his subordinate was a perplexing problem which resulted in what appeared to be two inconsistent lines of cases. In 1947 the Supreme Court decided the case of Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 189, 92 L.Ed. 95, and Mr. Justice Douglas observed, "The distinction we have noted between these two lines of cases apparently was not as clear to others as it seems to us." In the Fanning case the distinction between the two lines of cases was clearly stated: " * * * the superior officer is an indispensable party if the decree granting the relief sought will require him to take action, either by exercising directly a power lodged in him or by having a subordinate exercise it for him." The superior is not an indispensable party " * * * if the decree which is entered will effectively grant the relief desired by expending itself on the subordinate official who is before the court", and it is immaterial that the subordinate would be left under a command of his superior to do what the court has forbidden.

■ In the instant case, it is the acts of this defendant from which the plaintiff seeks relief. As Justice Douglas stated in the Fanning case, "If he desists in those acts, the matter is at an end. That is all the relief which petitioners seek. The decree in order to be effective need not require the Postmaster General to do a single thing". It follows that the Postmaster General is not an indispensable party.

The ultimate question for decision here is whether the plaintiff's product is a firearm within the meaning of 18 U.S.C.A. § 1715.

■ To be a firearm an implement must be a *weapon*. This is made clear not only by an examination of every standard dictionary, but by the definition formulated by Congress in the Federal Firearms Act, 15 U.S.C.A. § 901(3). A weapon is defined in Webster's New International Dictionary, 2nd edition, as:

"An instrument of offensive or defensive combat; something to fight with; anything used or designed to be used in destroying, defeating or injuring an enemy."

■ One of plaintiff's products was admitted in evidence by stipulation of the parties. It appears to be an ordinary cap or toy pistol, with a simulated barrel and cylinders. A closer examination reveals that a small tubular barrel about an eighth of an inch in diameter has been mounted on top of the simulated barrel and extends from the muzzle back to the point where the caps are inserted behind the simulated cylinders. To operate the pistol a small lead bird shot is inserted in the muzzle of the tubular barrel and, by use of a small ramrod, is pushed back to the other end of the barrel. A small cap such as is used in the ordinary cap pistol is then inserted and when fired the explosion of the cap causes the lead bird shot to be expelled from the muzzle of the barrel. The court conducted several tests in chambers which included holding the left hand about three feet from the muzzle and firing the pistol causing the pellet to strike the palm of the left hand. The result was a sharp sting of temporary duration similar to the bite of a mosquito. To denominate such an instrument a weapon is an absurd departure from reality. It would be ridiculous to say that it could be used for "combat" or "to fight with" or "in destroying, defeating or injuring an enemy."

The defendant has attached to his closing memorandum a copy of a letter from an official of another governmental agency setting forth that official's opinion that the plaintiff's product is a firearm. I assume that the defendant's purpose in attaching the letter was to adopt the opinion as a part of his argument. The opinion cites the definition of a firearm contained in the Federal Firearms Act, 15 U.S.C.A. § 901(3) and then states: "Note that the statute does not state that the weapon must be deadly or even injurious; the statute merely says 'any weapon'. If 'any weapon' shoots (expels) a projectile by means of an explosive it is a firearm covered by the Act. It seems to us it is that simple". The author of the opinion makes it simple, indeed, by ignoring the basic requirement that a firearm must first of all be a weapon. The author candidly admits that his opinion is based on "an emotional basis as well as strictly legal implications". He suggests that plaintiff's advertising is misleading and " * * * that the manufacturer might be subject to criminal prosecution for sending false and fraudulent matter through the United States mails." He states, "Factually, we surmise that almost any adult who ordered this pistol would be greatly disappointed on receiving it, disappointed in the sense that the converted cap pistol would not appear to be the target pistol the advertising led him to believe he would receive for his $2.98, even though he might figure that for that small sum he would not get too much in the form of a firearm." The defendant implies that the plaintiff should be prosecuted for misleading the public to believe that its product is a weapon and firearm and in the same breath urges the court to confirm what he condemns. He also suggests that following the purchaser's disappointment in not receiving the firearm he expected for $2.98, " * * * these pistols would find their way into the hands of the owners' 'small fry' as playthings, and anyone who has small sons or grandsons well knows their natural bent

to get themselves and their neighborhood pals in trouble with almost anything at hand."

If the plaintiff in this case is violating any Federal or State statutes, it is a matter for the attention of the respective agencies charged with the enforcement of such statutes, but the defendant should not expect the courts to dignify this toy pistol by denominating it a "firearm" or a "weapon". Courts consider the problems coming before them on a factual and legal basis—not on "an emotional basis". The particular statute under consideration was enacted by Congress to curb crime by preventing the shipment of firearms through the United States mails. Congress did not intend it to supplement the fraud statutes nor to implement state laws and local ordinances restricting the sale of fireworks, toys and playthings.

The injunction will be granted as prayed. Plaintiff is requested to prepare and submit findings in accord with local Rule 7.