## STANFORD
### v.
## LUNDE ARMS CORP.
### No. 13647.

United States Court of Appeals
Ninth Circuit.
March 25, 1954.

Warren E. Burger, Asst. Atty. Gen., Richard A. Lavine, Los Angeles, Cal., Edward H. Hickey, Irving Malchman, Attorneys, Department of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Clyde C. Downing, Max F. Deutz, Asst. U. S. Attys., Los Angeles, Cal., for appellant.

Dunlap, Holmes, Ross & Woodson, Kenneth A. Millard, Pasadena, Cal., for appellee.

Before HEALY, BONE, and ORR, Circuit Judges.

HEALY, Circuit Judge.

A statute of the United States, 18 U.S. C.A. § 1715, provides that "pistols, revolvers, and other firearms" capable of being concealed on the person are nonmailable and shall not be deposited in or carried by the mails or delivered by any postmaster, letter carrier, or other person in the Postal Service. Appellee manufactures, sells and ships through the mails toy cap pistols of a sort presently to be described. Its plant and business establishment are located at or near Alhambra, California.

In 1952 appellant, the postmaster at Alhambra, notified appellee that the Solicitor of the Department had determined that the item is a "firearm" and thus nonmailable. Appellee's representative went to Washington and conferred with the Solicitor but was shortly notified by appellant that the Solicitor had not changed his mind. Appellee thereupon brought this suit seeking a judgment declaring that its product is not nonmailable and asking for an injunction restraining appellant from refusing to accept it for mailing. Appellant resisted the action on the grounds that the Postmaster General is an indispensable party, and that appellee's product is in fact a firearm within the meaning of the statute. The trial court (Judge Byrne) granted a preliminary injunction, and this court, on application of appellant to stay the order, declined to interfere with it. Without further hearing the cause was submitted for decision with the result that the court declared the item not to be within the ban of the statute, and ordered the preliminary injunction to be made permanent. This appeal followed.

■ We are of opinion that the argument grounded on the absence of the Postmaster General is not well taken.

The controlling authority on that subject is Williams v. Fanning, 332 U.S. 490, 68 S.Ct. 188, 189, 92 L.Ed. 95. There the contention was considered that the Postmaster General must be made a party, because, if he were not, the local postmaster would be left under a command of a superior to do what the court has forbidden. The Supreme Court thought that fact would be immaterial "if the decree which is entered will effectively grant the relief desired by expending itself on the subordinate official who is before the court." All the relief appellee asked or received here is that appellant be enjoined from refusing to accept the items for mailing. He is not required to deliver the items to mailees through other post offices, but merely to accept them for delivery. He certainly has the power and ability to do that. We are not disposed to assume, as appellant suggests may be the case, that the postmasters elsewhere will ignore the court's decision and decline to deliver the product when it reaches them.

■ Other jurisdictional objections, not raised below, are urged upon us. The chief of these, and the only one possibly worthy of notice, is that the suit is in the nature of mandamus, hence is beyond the jurisdiction of the district court. Cf. Petrowski v. Nutt, 9 Cir., 161 F.2d 938, and authorities there cited. Williams v. Fanning, supra, would appear to afford a sufficient answer to this argument. The matter involved there was a request directed to the district court for relief in respect of requiring a local postmaster to cash money orders which the Postmaster General had directed him not to cash. The district court refused to grant the relief. The Supreme Court reversed, thus apparently sustaining the jurisdiction of the court of first instance to entertain such a bill in equity. The relief granted in the case before us smacks no more of mandamus than that thought proper to be granted in Williams v. Fanning.

■ Turning to the merits, the question for consideration is whether appellee's product is a firearm within the

meaning of the statute. An exemplar of it was introduced in evidence, and is accurately described by the trial court in its opinion, 107 F.Supp. 450, 452, in these words: "It appears to be an ordinary cap or toy pistol, with a simulated barrel and cylinders. A closer examination reveals that a small tubular barrel about an eighth of an inch in diameter has been mounted on top of the simulated barrel and extends from the muzzle back to the point where the caps are inserted behind the simulated cylinders. To operate the pistol a small lead bird shot is inserted in the muzzle of the tubular barrel and, by use of a small ram rod, is pushed back to the other end of the barrel. A small cap such as is used in the ordinary cap pistol is then inserted and when fired the explosion of the cap causes the lead bird shot to be expelled from the muzzle of the barrel." In the solitude of its chambers the court, being naturally desirous of ascertaining all the facts, tried the pistol out on itself, using the palm of its hand as a target. The sole effect observable, we are informed, was a stinging sensation of temporary duration not unlike that produced by the bite of a mosquito. We feel constrained to agree with the court that it is nonsense to regard such an instrument as a lethal weapon.[1]

That Congress had lethal weapons in mind, not this sort of instrument, is clear from the legislative history of the statute. Mr. Miller, the author of the bill, in describing its objective, stated:

"This bill, and the companion bill forbidding the shipment of firearms that are capable of being concealed on the person through interstate carriers, it is hoped will minimize the prevalence of firearms in the hands of the undesirable criminal element of the country. I think we are all acquainted, generally speaking, with our State laws on the question and also with many of our municipal regulations governing the sale of firearms in cities. Most all States, I think every one, makes the carrying of a concealed weapon a crime, in some States a felony and in some a misdemeanor. Most all cities have municipal regulations prohibiting the sale of firearms within the city limits of the cities except where application is made and a permit granted by public officials authorizing a citizen to purchase firearms and retain them in his home. Every criminal, of course, carries concealed weapons. Every robber, every highwayman, every highjacker, every bootlegger in the country is armed with a pistol, and when a policeman or officer of the law gets after and pursues them the first thing they do is to get rid of their firearms, and then they just simply get one through the mail-order house or through the express to take the place of the one which they have thrown away. This is to stop their replenishing themselves from the mail angle, through the mails, and in conjunction with the companion bill, which forbids their transportation over common carriers, those two put together, we hope, will stop the prevalent use of these weapons. There is nothing more dangerous to the community than this criminal element having the liberty on any and all occasions to buy concealed weapons."[2]

Affirmed.

[1]. It is significant to note the government's concession that neither the ordinary cap pistol nor the familiar BB gun is classified by the Department as nonmailable.

[2]. Congressional Record, 68th Congress, 2d Sess., Vol. 66, Part 1, p. 726.
Mr. Ramseyer, speaking for the committee in charge of the bill, similarly described its aim.