**JEFFRIES v. OLESEN.**

No. 15779.

United States District Court,
S. D. California,
Central Division.

May 13, 1954.

Jerome Weber, Reuben Rosensweig, Los Angeles, Cal., for plaintiff.

Laughlin E. Waters, U. S. Atty., Max F. Deutz, James C. R. McCall, Andrew J. Davis, Jr., Asst. U. S. Attys., Los Angeles, Cal., for defendant.

MATHES, District Judge.

Invoking the jurisdiction of this court under 28 U.S.C.A. § 1339 plaintiff seeks judgment declaring void, 28 U.S.C.A. § 2201; Skelly Oil Co. v. Phillips Co., 1950, 339 U.S. 667, 671, 70 S.Ct. 876, 94 L.Ed. 1194; Southern Pac. Co. v. McAdoo, 9 Cir., 1936, 82 F.2d 121, and permanently enjoining enforcement of Postoffice Department Fraud Order No. 55291 issued by the Postmaster General under the claimed authority of 39 U.S.C.A. §§ 259 and 732.

Section 259 of Title 39 of the United States Code provides *inter alia* that: "The Postmaster General may, upon evidence satisfactory to him that any person or company is engaged in conducting any lottery * * * or * * * any other scheme or device for obtaining money or property of any kind through the mails by means of false or fraudulent pretenses, representations, or promises, instruct postmasters at any post office * * * to return all such mail matter to the postmaster at the office at which it was originally mailed, with the word 'Fraudulent' plainly written or stamped upon the outside thereof; and all such mail matter so returned to such postmasters shall be by them returned to the writers thereof, under such regulations as the Postmaster General may prescribe." Section 732 authorizes refusal of payment of any money order drawn in favor of any person found by the Postmaster General to be engaged in conducting a lottery or scheme to defraud in violation of § 259.

Plaintiff's action was originally brought against Michael D. Fanning "individually and as United States Post-master of Los Angeles, California." Following the trial and submission of the case for decision, Otto K. Olesen succeeded to the office, and an amended and supplemental complaint alleging that he continues the action of his predecessor in enforcing the challenged order was then filed by leave of court. Postmaster Olesen was thereupon substituted as party defendant, Fed.Rules Civ.Proc., Rule 25(d), 28 U.S.C.A., and the suit continued and submitted for decision against defendant Olesen "individually and as United States Postmaster of Los Angeles, California."

■ Insofar as any claim for relief is asserted against defendant in his official capacity as United States Postmaster, the action is an attempt to sue the Government, see Larson v. Domestic & Foreign etc. Corp., 1949, 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628; Wells v. Roper, 1918, 246 U.S. 335, 38 S.Ct. 317, 62 L.Ed. 755; State of Louisiana v. McAdoo, 1914, 234 U.S. 627, 34 S.Ct. 938, 58 L.Ed. 1506; Belknap v. Schild, 1896, 161 U.S. 10, 16 S.Ct. 443, 40 L.Ed. 599; Governor of Georgia v. Madrazo, 1828, 1 Pet. 110, 26 U.S. 110, 7 L.Ed. 73, in circumstances where the Congress has not by statute consented that the Sovereign may be sued. See United States v. Sherwood, 1941, 312 U.S. 584, 586–587, 61 S.Ct. 767, 85 L.Ed. 1058; Munro v. United States, 1938, 303 U.S. 36, 41, 58 S.Ct. 421, 82 L.Ed. 633; United States v. Clarke, 1834, 8 Pet. 436, 33 U.S. 436, 444, 8 L.Ed. 1001. Hence the action against Olesen *qua* United States Postmaster must be dismissed for want of jurisdiction over the person of the defendant in his official capacity. Cf. Blackmar v. Guerre, 1952, 342 U.S. 512, 515–516, 72 S.Ct. 410, 96 L.Ed. 534; Larson v. Domestic & Foreign Corp., supra, 337 U.S. at page 683, 705, 69 S.Ct. 1457; Wells v. Roper, supra, 246 U.S. at page 338, 38 S.Ct. 317.

■ The object of the suit is to restrain the defendant in his individual capacity from doing acts which it is alleged he has no lawful authority to do. As said Mr. Justice Holmes in Colorado

v. Toll, 1925, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927: "There is no question that a bill in equity is a proper remedy and that it may be pursued against the defendant without joining either his superior officers or the United States." 268 U.S. at page 230, 45 S.Ct. at page 506.

■ The defendant, *qua* individual, as Mr. Justice Miller explained in Cunningham v. Macon etc. R. R. Co., 1883, 109 U.S. 446, 3 S.Ct. 292, 27 L.Ed. 992, "is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he *asserts* authority as such officer. To make out his defense he must show that his authority was sufficient in law to protect him." 109 U.S. at page 452, 3 S.Ct. at page 297.

■ Upon this principle that an action may always be maintained within the equity jurisdiction of this court to restrain a Federal official from exceeding his lawful authority, a citizen may sue to enjoin a United States Postmaster in his individual capacity from withholding mail. Williams v. Fanning, 1947, 332 U.S. 490, 68 S.Ct. 188, 92 L.Ed. 95; American School of Magnetic Healing v. McAnnulty, 1902, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90; cf. Land v. Dollar, 1947, 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209; Ickes v. Fox, 1937, 300 U.S. 82, 96–97, 57 S.Ct. 412, 81 L.Ed. 525; Morrison v. Work, 1925, 266 U.S. 481, 486–487, 45 S.Ct. 149, 69 L.Ed. 394; Philadelphia Co. v. Stimson, 1912, 223 U.S. 605, 619–620, 32 S.Ct. 340, 56 L.Ed. 570.

In the case at bar the evidentiary facts are not in dispute. As a result of discussions with members of the medical profession and servicemen while spending two and one-half years in an army hospital, plaintiff evolved the idea of an appliance to aid the male in sexual intercourse.

In 1952 plaintiff established the business of "E–S Laboratories" with an investment of some ten thousand dollars, and produced for sale the appliance in question, called "The Erector."

Sales were solicited through direct-by-mail advertising literature to names and addresses appearing on lists of known buyers of male hormones, purchased by plaintiff from mailing-list companies.

The advertising literature sent by plaintiff through the mails consists of a 5″ x 8″ folded leaflet containing printed matter on all four sides, with an illustration of the appliance at the top of the front page. Since this leaflet admittedly sets forth all the representations sent by plaintiff through the mails, it is reproduced in full in the margin.[1]

**1.** [FRONT—page 1.]

.An Aid To Nature ·

**THE ERECTOR**

Necessity is the mother of invention, and as an aid to nature we are offering for your serious consideration the facts about our surgical appliance that is sold under the registered trade name of "ERECTOR."

The "ERECTOR" is not a cure. It is merely an ingenious appliance, that when used, simply by virtue of its construction, supplies the necessary rigidity to induce the organ to function. The fact that it has won great favor among men in all walks of life is sufficient evidence of its merits and efficacy.

Embarrassment, which is occasioned entirely by false modesty, is the only impediment to frank discussion and quick relief for most of these troubles. Mortification and despair are the penalty if you are not man enough to seek relief from your misfortunes.

When the natural organs, from general debility, excesses or other causes, become impaired, human ingenuity is compelled to devise some adjunct by the aid of which the organ can register something like its normal efficiency.

**E - S LABORATORIES**
*Exclusive Surgical Appliances*
**Mercury Building**          **Los Angeles 25, Calif.**

## [INSIDE—page 2.]

### No Drugs! No Hormones! No Frustration!

Are you one of those vast numbers of men who can no longer maintain their marital relations because of inability to obtain enough rigidity to make penetration and sustain normal intercourse?

Then, this is meant for you as it will enable penetration!

Fundamentally, the female sexual attitude is 'passivity' and the male, if not a **sexual failure**, is expected to take an aggressive attitude. There is no need to lose aggressiveness or suppress your desires because of weak erections.

The **ERECTOR** is designed and manufactured to aid married men in their marital relations; eliminate the strain, expense and necessity of expensive drugs and hormones; prolong normal, healthy marital relations, and insure the happiness of married couples.

The **ERECTOR** is used to enable penetration when it would otherwise be impossible because of inability to obtain sufficient erection. PENETRATION AND NORMAL RELATIONS CAN BE ENJOYED THROUGH THE USE OF THE ERECTOR! In most cases it is only necessary to use the **ERECTOR** for initial penetration and until sufficient rigidity is obtained to carry on normally, although it can be worn throughout the entire relation without noticeable presence.

Some men, in addition to having weak erections, can not prolong the sexual embrace long enough to bring their partners to the climax. They have premature ejaculations, lose erection and leave their wives unsatisfied sexually, thus preventing the climatic release of nervous tension technically known as an orgasm. The **ERECTOR** will also aid you in this respect and give you the needed stability to carry on after ejaculation and until your wife has experienced satisfaction.

## [INSIDE—page 3.]

### A Present-Day Necessity

Our observation shows there is a definite undercurrent of public opinion that, to a very large extent, the present-day domestic infelicity is attributable to one great CAUSE, a cause directly traceable to the male's inability to perform his duty.

Fear of failure, imaginary obstacles, which require physical assistance, namely: the restoration of confidence, are overcome by the use of this appliance.

### Assists Rigidity

So long as you have a DESIRE TO COHABIT, it is an indication that the glands are still active and should function if the necessary INSERTION COULD BE ACCOMPLISHED. The **ERECTOR** will supply the necessary preliminary rigidity; then NATURE should automatically follow its course.

### The ERECTOR is Especially Recommended . . .

. . . where it is possible to induce a partial erection only.

. . . where emission takes place too quickly.

. . . where confidence is lacking.

### How to Use the ERECTOR

In adjusting, all that is necessary is to insert the organ through both bands, with the OPEN side up, being sure that the last band is placed behind the head of the organ.

The **ERECTOR** is of simple construction and easy of manipulation, absolutely sanitary and capable of preservation for an extensive period of time. It is composed of flesh-colored, soft, smooth surgical rubber with a texture and consistency similar to that of human flesh; the torso embodying the appliance having the rigidity which insures the insertion, while both bands are of extreme elasticity.

## [BACK—page 4.]

### Instructions for Ordering
### Your Proper Size

In order to obtain your proper length, hold the end of the organ between the thumb and forefinger and stretch gently away from the body until a slight tension is manifest. MEASURING ON TOP WITH RULE IN INCHES FROM THE BODY TO THE BACK OF HEAD OF ORGAN. MEASURE ORGAN WHILE IN LIMBER STATE. Number of inches will indicate your size. The **ERECTOR** comes in lengths of 2½, 3, 3½, 4, 4½, and 5 inches.

### Fill Out And Mail Today

E-S Laboratories
Mercury Bldg.
11168 Santa Monica Blvd.
Los Angeles 25, Calif.
Gentlemen:

Enclosed will find ten ($10) dollars. Cash ☐ Check ☐ Money Order ☐ C.O.D. ☐ Please forward by return mail, one **ERECTOR**. If, after using, I am not fully satisfied, I will return for full refund.

Length ........inches. (Instructions above)

Name .................................

Address .................................

City ............Zone .....State ........
(please type or print plainly)

We pay all mailing charges except on C.O.D. orders. You take no risk since you must obtain thrilling satisfaction or money is refunded without question. Complete directions for use enclosed with each order. The **ERECTOR** is packaged and mailed to you in neat sealed boxes the same day your order is received.

### Start Using an ERECTOR as
### Soon as Possible!!!

On May 19, 1953, the Solicitor for the Post Office Department filed a complaint alleging that "a fraudulent scheme is being conducted * * * in that respondent [plaintiff here] is now and has been obtaining remittances of money through the mails for a device called the "Erector" by means of false and fraudulent pretenses, representations and promises * * *.""

This complaint alleged in particular that "by means of * * * unsolicited circular matter * * * respondent is representing to the public in substance and effect:

"a. That the said 'Erector,' when used as directed by men 'supplies the necessary rigidity to induce' the sex 'organ to function', that is to say, that the use of said device by any man unable to perform the sex act will enable him to do so normally;

"b. That any man whose sex organ 'become(s) impaired from general debility, excesses and other causes,' by the use of the said 'Erector' as directed, will overcome those conditions and be able to perform the sex act normally;

"c. That by the use of the said 'Erector' no man needs 'to lose aggressiveness' or 'suppress' his desires because of 'weak erections', that is to say, that the said device will eliminate weak erections;

"d. That, when used as directed, the said 'Erector' will prevent 'premature ejaculation';

"e. That by the use of the said 'Erector' any man who cannot perform the sex act because of 'Fear of failure and imaginary obstacles' will obtain a restoration of confidence and be able to enjoy normal sexual relations;

"f. That any man who has a 'Desire to Cohabit', will be able to do so by the use of the said 'Erector' as directed regardless of his age or physical condition;

"g. That the said 'Erector' is designed 'to aid married men in their marital relations' to 'eliminate the strain, expense and necessity of expensive drugs and hormones'; and

"h. That the said 'Erector is designed' to and will 'aid married men in their marital relations', to 'prolong normal, healthy marital relations and insure the happiness of married couples.'

"That such statements are false and fraudulent.

"Wherefore, premises considered, it is recommended that a fraud order be issued by the Postmaster General against the name and address set forth in the caption hereof pursuant to the provisions of Title 39 U.S. Code, Sections 259 and 732."

A hearing on this complaint was set for June 10, 1953, before a Hearing Examiner in Washington, D. C. On May 22, 1953, notice of the hearing was served upon plaintiff in California. Plaintiff thereupon made written application that the place of hearing be transferred across the continent to Los Angeles. This was denied. Application for a rehearing upon the request to transfer the hearing was likewise denied.

Plaintiff then filed an answer denying generally and specifically "that a fraudulent scheme is being conducted"; or that he has obtained "remittances of money through the mail for a device called the 'Erector' by means of false and fraudulent pretenses, representations and promises"; or "that any * * * statements appearing in his advertising * * are false or fraudulent."

On June 25, 1953, a hearing was held at Washington, D. C. Neither plaintiff nor his counsel was able to appear. The hearing consisted of the swearing of a postal inspector, who identified the advertising matter admittedly being sent by plaintiff through the mails, and the testimony of a physician.

The Hearing Examiner's opinion, finding plaintiff's use of the mails to be a scheme as alleged for obtaining money by means of "false and fraudulent pretenses, representations and promises * * *", declares: "It is clear from examination of Respondent's mail order

advertising material that in the operation of this enterprise, he is making in substance and effect the representations charged in the complaint and set forth above. * * * Dr. Gordon A. Granger, a physician possessing considerable experience in the field of sexual disorders, appears as a medical expert in behalf of the Solicitor. His testimony shows that the inability of the male to satisfactorily perform the sexual act, by reason of inability to attain the necessary degree of rigidity, or by reason of premature ejaculation, may be due to a multiplicity of basic causes, of both physical and psychogenic origin. He testified that perhaps the greatest source of difficulty in this connection stems from psychic causes, such as business and financial worries, and marital difficulties. He testified that before persons rendered sexually inadequate by causes of this character can be helped to the point where normal sexual function becomes possible, it is necessary to resort to psychotherapy in order to remove the mental barriers to normal sex life and sex reactions. He testified that for such persons, Respondent's device would be of no value.

"According to the testimony of this expert the condition known as premature ejaculation is most commonly due to inflammatory processes and reactions in the seminal vesicles and other parts of the male organ. He testified that Respondent's device will not prevent or eliminate this condition.

"Further, according to the medical expert, other important causes of the inability of the male to satisfactorily and normally perform the sexual act are hormone failures by reason of sickness, accident, operations or underdevelopment, and general debility due to chronic wasting diseases such as severe anemia and prolonged cancers. He testified that the use of Respondent's 'Erector' would not overcome such causes and enable such persons to have normal intercourse.

"The testimony of the medical expert further shows that Respondent's device will not affect or overcome the other causes which, according to Respondent's advertising literature, are responsible for male sexual failure and inadequacy, such as 'weak erections', 'fear of failure and imaginary obstacles', advanced age and poor physical condition."

The opinion of the Hearing Examiner concludes: "The uncontradicted expert medical testimony establishes that Respondent's advertising representations are false. Further, measured by this testimony, these representations so grossly exaggerate the value of the 'Erector,' and are so completely lacking in scientific support as to warrant the inference that in disseminating them to that segment of the public to whom they are intended to appeal, Respondent was motivated by intent to deceive."

On July 27, 1953, the Postmaster General issued Fraud Order No. 55291 directing the defendant Postmaster *inter alia* "to return all * * * mail matter * * * directed to [plaintiff] * * * to the senders thereof, with the words 'Fraudulent: Mail to this address returned by order of the Postmaster General' plainly written or stamped upon the outside * * *."

Effectively and completely put out of business by a single awesome stroke of the pen, plaintiff commenced this action, alleging: "that said fraud order is a void and arbitrary action, made without warrant and authority of law, in violation of plaintiff's constitutional rights * * * to due process of law * * * and is not supported or sustainable by any credible, competent, relevant or material evidence; and * * * violates plaintiff's rights to due process of law in that * * * did not hear or consider the evidence * * * but relied solely on ex parte statements * * * without giving plaintiff an opportunity to appear at a convenient place and time and be heard. * * *", See Leach v. Carlile, 1922, 258 U.S. 138, 140–141, 42 S.Ct. 227, 66 L.Ed. 511 (dissenting opinion of Holmes and Brandeis, JJ.); cf. U. S. ex rel. Milwaukee Social Democratic Pub. Co. v. Burleson, 1921, 255 U.S. 407, 417–438, 41 S.Ct. 352, 65 L.Ed. 704 (dissenting opinions of Brandeis, J. and Holmes, J.).

■ Plaintiff thus advances three contentions: (1) that he was denied due process of law, (2) that the findings of fact made to sustain the order have no support in the evidence, and (3) that the conclusions of the Postmaster General are contrary to law. The claimed denial of due process raises a constitutional question, U.S.Const. Amend. V; Wong Yang Sung v. McGrath, 1950, 339 U.S. 33, 70 S.Ct. 445, 94 L.Ed. 616, which established policy dictates should not be reached unless prerequisite to decision. United States v. Hayman, 1952, 342 U.S. 205, 223, 72 S.Ct. 263, 96 L.Ed. 232; Coffman v. Breeze Corps., 1945, 323 U.S. 316, 324–325, 65 S.Ct. 298, 89 L.Ed. 264.

First to be considered then are the contentions that the evidence does not afford either factual or legal basis for the order.

■ The rules which must guide decision here are well stated by Judge Dietrich in Aycock v. O'Brien, 9 Cir., 1928, 28 F.2d 817: "While within a limited range courts of equity will grant relief against orders of this character, it is well settled that they will not interfere where there has been no mistake of law, a fair hearing has been accorded, and the findings of the administrative officers upon issues of fact are supported by substantial evidence." 28 F.2d at page 817.

In the case at bar the evidence upon which the Postmaster General acted stood uncontradicted at the administrative hearing. The initial inquiry then is whether that evidence is sufficient within the bounds of reason to sustain the findings made to support the order. These findings are summarized in the declaration of the Hearing Examiner that: "It is clear from examination of Respondent's mail order advertising material that * * * he is making in substance and effect the representations charged in the complaint. * * *"

Even a cursory comparison of the contents of plaintiff's advertising circular reproduced in the margin with the charges quoted above from the administrative complaint, will serve to convince not only that the Hearing Examiner's statement is clearly erroneous, but also that the Solicitor for the Postoffice Department permitted his apparent distaste for plaintiff's business to lead him to prejudge and grossly overstate the case at the time he drafted the complaint.

Witness for example charges "a" and "f": that by means of "circular matter * * * respondent is representing to the public * * * [a] * * * that the use of said device by any man unable to perform the sex act will enable him to do so normally"; and [f] "That any man who has a 'Desire to Cohabit', will be able to do so by the use of the said 'Erector' as directed regardless of his age or physical condition. * * *"

Charges "b", "c" and "d" are equally unfair and unfounded. Only the innocuous charges "e", "g" and "h" can reasonably be said to be based upon a fair and full reading of the circular in question.

■■ Courts take judicial notice of facts of common notoriety and within judicial knowledge, relating to the health, natural habits and propensities of man. See Safeway Stores v. Dunnell, 9 Cir., 1949, 172 F.2d 649, 653; cf. Ohio Bell Tel. Co. v. Public Utilities Comm., 1937, 301 U.S. 292, 300–302, 57 S.Ct. 724, 81 L.Ed. 1093; Shapleigh v. Mier, 1937, 299 U.S. 468, 475, 57 S.Ct. 261, 81 L.Ed. 355. Nature demands that judicial notice be taken of the inescapable fact that there inevitably comes an age and condition in man when both action and reaction of involuntary muscles slow and sometimes fail, as surely as with voluntary muscles. See: Southern Pac. Co. v. Guthrie, 9 Cir., 1950, 180 F.2d 295, 303. Bacon expressed this truth more than three centuries ago by admonishing that we "Discern of the coming on of years, and think not to do the same things still, for age will not be defied." [Francis Bacon, Essays, XXX (1625).]

■ It is appropriate moreover to notice judicially that there is probably no subject matter more highly deflating to masculine ego, and hence more highly

calculated to arouse instant male scorn and prejudice, than the problem raised in plaintiff's advertising circular. Whether such masculine propensity to scorn and prejudice increases or decreases with age may be open to debate. So with the question whether the increase or decrease varies in mathematical or geometrical progression or retrogression. But it is beyond debate in my opinion that no male of sufficient age to have any appreciable experience in such matters could in reason be deceived by anything said in plaintiff's circular.

If this were something to be taken internally, something to affect the chemistry of the body in ways unmeasured and unseen, cf. Leach v. Carlile, supra, 258 U.S. at page 138, 42 S.Ct. 227; Fanning v. Williams, 9 Cir., 1949, 173 F.2d 95; Shaw v. Duncan, 10 Cir., 1952, 194 F.2d 779; Wheeler v. Farley, D.C., S.D. Cal.1934, 7 F.Supp. 433, 434, the "puffing" words of the salesman appearing in the circular might well deceive. But the device plaintiff offers for sale is nothing more than a mere mechanical support or appliance akin to a common splint and, like the ordinary athletic supporter or jock-strap, is to be worn externally where the user can plainly see the results.

These factors considered, it is beyond the bounds of reason to hold that any representation made by plaintiff is likely to lead any reasonable person, mature enough to make use of it, to believe that the device is " 'something different from, superior to, and worth more than, what is actually being sold' ". Cf. Farley v. Heininger, 1939, 70 App.D.C. 200, 105 F.2d 79, 84.

That the circular might be done in better taste cannot be denied. And such statements as "normal, healthy marital relations" and "insure the happiness of married couples", taken out of context as was done by the Solicitor and the Hearing Examiner, might suggest claims not literally supportable. But it is clear from the advertisement taken *in summa* —read in its entirety in the light of the accompanying illustration of the appliance—that plaintiff in fact made no false claims of any materiality. *Impotentia excusat legem!*

Furthermore, there is no evidence to sustain a finding that the device will not function in reasonable fulfillment of the claims made by plaintiff, as those claims would be interpreted and understood by the ordinary man reading the circular as a whole. Cf. Donaldson v. Read Magazine, 1948, 333 U.S. 178, 188–189, 194–196, 68 S.Ct. 591, 92 L.Ed. 628. The very most that can be said favorably to the evidence is that the physician called by the Solicitor expressed an honest difference of opinion on a matter with respect to which any married layman, including plaintiff, is by actual experience presumably qualified. See Pinkus v. Walker, D.C.N.J.1945, 61 F.Supp. 610, affirmed, 3 Cir., 1948, 170 F.2d 786, affirmed, 1949, 338 U.S. 269, 70 S.Ct. 110, 94 L.Ed. 63; American School of Magnetic Healing v. McAnnulty, supra, 187 U.S. 94, 23 S.Ct. 33; Jaffe, Judicial Review: "Substantial Evidence on the Whole Record", 64 Harv.L.Rev. 1233, 1239, 1254, 1257 (1951); Davis, Scope of Review of Federal Administrative Action, 50 Col.L.Rev. 559, 560, 564 (1950); Schwartz, Substantial Evidence Rule and Administrative Procedure Act, 25 Wash.L.Rev. 135 (1950); Schwartz, Decade of Administrative Law: 1942–1951, 51 Mich.L.Rev. 775, 851, 852 (1953).

There is, then, no substantial evidence to support the finding that plaintiff made any false pretenses or representations or promises; and the contrary finding of the Postmaster General must "justly be said to be palpably wrong and therefore arbitrary." Leach v. Carlile, supra, 258 U.S. at page 140, 42 S.Ct. 227, at page 228; cf. Rood v. Goodman, 5 Cir., 1936, 83 F.2d 28; Simmons v. Farley, 1938, 69 App.D.C. 110, 99 F.2d 343, 347, certiorari denied, 1938, 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed 422; Schwartz, Administrative World of Mr. Justice Frankfurter, 59 Yale L.J. 1228, 1256, 1257 (1950).

Although the language of the statute is in the disjunctive, literally

prohibiting any scheme or device "for obtaining money * * * through the mails by means of false or fraudulent pretenses, representations, or promises", 39 U.S.C.A. §§ 259, 732, it is settled that: "Proof of fraudulent purposes is essential—an 'actual intent to deceive.' * * * Consequently fraud under the mail statutes is not established merely by proving that an incorrect statement was made." Reilly v. Pinkus, supra, 338 U.S. at page 276–277, 70 S.Ct. 110, 114.

The administrative complaint here charged, moreover, and the Postmaster General in his order found, that plaintiff was conducting a scheme for obtaining money through the mails "by means of false or fraudulent pretenses, representations, or promises". This phrase "false and fraudulent", as pointed out in Seven Cases v. United States, 1916, 239 U.S. 510, 36 S.Ct. 190, 60 L.Ed. 411, "must be taken with its accepted legal meaning, and thus it must be found that the statement * * * was put there * * * with actual intent to deceive,— an intent which may be derived from the facts and circumstances, but which must be established." 329 U.S. at page 517, 36 S.Ct. at page 193.

Long ago Mr. Justice Story declared for the Court in Tucker's Lessee v. Moreland, 1836, 10 Pet. 58, 35 U.S. 58, 9 L.Ed. 345, that: "Fraud is not presumed, either as a matter of law or fact, unless under circumstances not fairly susceptible of any other interpretation." 10 Pet. 78, 35 U.S. at page 78; see, also: United States v. Arredondo, 1832, 6 Pet. 691, 716–717, 31 U.S. 691, 716–717, 8 L. Ed. 547; Jones v. Simpson, 1886, 116 U.S. 609, 615, 6 S.Ct. 538, 29 L.Ed. 742; United States v. Colorado Anthracite Co., 1912, 225 U.S. 219, 226, 32 S.Ct. 617, 56 L.Ed. 1063.

As Mr. Justice Minton expressed it more than a century later in United States v. Wunderlich, 1951, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113: "By fraud we mean conscious wrongdoing, an intention to cheat or be dishonest. * * fraud should be alleged and proved, as

it is never presumed." 342 U.S. at page 100, 72 S.Ct. at page 155.

"The significant fact", the Court observed in Durland v. United States, 1896, 161 U.S. 306, 16 S.Ct. 508, 40 L.Ed. 709, "is the intent and purpose." 161 U.S. at page 313, 16 S.Ct. at page 511; Public Clearing House v. Coyne, 1904, 194 U.S. 497, 516, 24 S.Ct. 789, 48 L.Ed. 1092. Plaintiff's unqualified assurance of "satisfaction or money is refunded without question" evidences two things: that plaintiff had neither intent nor purpose to represent that use of the offered appliance would prove satisfactory to all persons on any occasion or to any person on all occasions, see: Jarvis v. Shackelton Inhaler Co., 6 Cir., 1943, 136 F.2d 116, 121; Pinkus v. Walker, supra, 61 F.Supp. at page 613; and that it cannot fairly be said, under the circumstances shown by the record before the Postmaster General, that plaintiff had either intent or purpose to deceive or defraud any person who might be interested in putting the appliance to a trial use. Cf. Farley v. Heininger, supra, 105 F.2d at page 84; Harris v. Rosenberger, 8 Cir., 1906, 145 F. 449, 455, 13 L.R.A., N.S., 762, certiorari denied, 1906, 203 U. S. 591, 27 S.Ct. 778, 51 L.Ed. 331.

The case at bar, like Reilly v. Pinkus, supra, "emphasize[s] the importance of limiting Postoffice Department orders to instances where actual fraud is clearly proved." 338 U.S. at page 277, 70 S.Ct. at page 115. For here, as in Reilly v. Pinkus, "the evidence upon which the Postmaster General acted was not factual evidence but solely in the nature of opinion evidence", 170 F.2d at pages 790–791, as to a matter "upon which opinions may honestly differ and which cannot be factually and definitely established". Id., 170 F.2d at page 789.

Throughout more than half a century the Supreme Court has consistently held that in such a case—a case wherein there is lacking either the essential element of falsity in fact or the equally essential element of fraud in intent and purpose—a fraud order is be-

yond the lawful authority conferred upon the Postmaster General under 39 U.S.C.A. §§ 259 and 732. Reilly v. Pinkus, supra, 338 U.S. at pages 276–277, 70 S. Ct. 110; Donaldson v. Read Magazine, supra, 333 U.S. at pages 190–192, 68 S. Ct. 591; American School of Magnetic Healing v. McAnnulty, supra, 187 U.S. at pages 104, 106, 109–110, 23 S.Ct. 33.

■■■■ Here the Postmaster General has "over-stepped the boundaries of interpretation" and hence has exceeded his statutory authority. F. C. C. v. American Broadcasting Co., 1954, 347 U.S. 284, 296, 74 S.Ct. 593; cf. Lunde Arms Corp. v. Stanford, D.C.S.D.Cal. 1952, 107 F.Supp. 450, affirmed, 9 Cir., 1954, 211 F.2d 464. As Mr. Justice Reed explained for the Court in Social Security Board v. Nierotko, 1946, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718: "Administrative determinations must have a basis in law and must be within the granted authority. Administration when it interprets a statute so as to make it apply to particular circumstances acts as a delegate to the legislative power. * * * An agency may not finally decide the limits of its statutory power. That is a judicial function." 327 U.S. at page 369, 66 S.Ct. at page 643; and see Leach v. Carlile, supra, 258 U.S. at page 141, 42 S.Ct. 227.

■■■ To adopt the language of Mr. Justice Peckham in American School of Magnetic Healing v. McAnnulty, supra: "The facts, which are here admitted of record, show that the case is not one which, by any construction of those facts, is covered or provided for by the statutes under which the Postmaster General has assumed to act, and his determination that those admitted facts do authorize his action is a clear mistake of law as applied to the admitted facts, and the courts, therefore, must have power in a proper proceeding to grant relief. * * Where the action of such an officer is thus unauthorized, he thereby violates the property rights of the person whose letters are withheld." 187 U.S. at page 109–110, 23 S.Ct. at page 39.

What has been said necessarily decides the question of substantive due process— whether the action taken falls within the scope of statutory authority conferred upon the Postmaster General by 39 U.S.C.A. §§ 259 and 732. Cf. Shaughnessy v. U. S. ex rel. Mezei, 1953, 345 U.S. 206, 213, 222–228, 73 S.Ct. 625, 97 L.Ed. 956; Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 136–137, 71 S.Ct. 624, 95 L.Ed. 817; Wong Yang Sung v. McGrath, supra, 339 U.S. 33, 70 S.Ct. 445; Reilly v. Pinkus, supra, 338 U.S. at page 276, 70 S.Ct. 110; American School of Magnetic Healing v. McAnnulty, supra, 187 U.S. at page 109, 23 S.Ct. 33.

There remains for determination the issue as to whether plaintiff was denied procedural due process. See: Joint Anti-Fascist Refugee Committee v. McGrath, supra, 341 U.S. at page 143, 161–165, 177–179, 186, 200–201, 71 S.Ct. 624; Shaughnessy v. Mezei, supra, 345 U.S. at pages 224–225, 73 S.Ct. 625; cf. Southern Ry. Co. v. Commonwealth of Virginia, 1933, 290 U.S. 190, 198–199, 54 S.Ct. 148, 78 L.Ed. 260.

An opportunity for hearing, such as the Postmaster General accorded plaintiff here, has been held to satisfy the minimum due-process requirements of the Federal Constitution. Public Clearing House v. Coyne, supra, 194 U.S. at pages 508–510, 24 S.Ct. 789; cf. United States ex rel. Milwaukee Social Democratic Pub. Co. v. Burleson, 1921, 255 U. S. 407, 41 S.Ct. 352, 65 L.Ed. 704; Degge v. Hitchcock, 1913, 229 U.S. 162, 33 S.Ct. 639, 57 L.Ed. 1135; Smith v. Hitchcock, 1912, 226 U.S. 53, 33 S.Ct. 6, 57 L.Ed. 119; Bates & Guild Co. v. Payne, 1904, 194 U.S. 106, 24 S.Ct. 595, 48 L.Ed. 894. The statutes under which the Postmaster General acted do not specify any hearing at all as a statutory requisite of due process. Cf. United States v. Nugent, 1953, 346 U.S. 1, 7, 73 S.Ct. 991, 97 L.Ed. 1417; Stanford v. Lunde Arms Corp., supra, 211 F.2d 464; 5 U.S.C. §§ 1004–1007.

However the Postmaster General has promulgated regulations to govern exercise of the power conferred upon him by

39 U.S.C.A. §§ 259 and 732. They provide for a hearing within the requirements of the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq. [See: 39 CFR §§ 150.400–150.425.] Hearing examiners are empowered to conduct the administrative hearings [id. § 150.413], and to grant or deny continuances. [Id. § 150.412.] "Hearings are held in Room 3237, Post Office Department, Washington 25, D. C., and in such other locations as may be designated by the hearing examiner." [Id. § 150.414(a).]

Plaintiff's application to transfer the hearings from Washington, D. C. to Los Angeles was first denied because the request "was not made in accordance with the requirements of Section 150.414(b)." Attempting to comply with those requirements, plaintiff then filed a "Petition for Re-hearing of Previous Request for Transfer" representing (1) that if the hearings were transferred to Los Angeles he would be able to offer "testimony to the effect that the device will accomplish that for which it is recommended"; (2) that plaintiff's wife "is a victim of polio"; and (3) that plaintiff "is financially unable to transport * * * witnesses to Washington, D. C. and is unable to leave his wife unattended * * * [and] further is financially unable to incur other expenses required and incidental thereto."

This second application was likewise denied, notwithstanding the mandate of the regulations that: "The hearing examiner shall grant or deny such application having due regard for the convenience and necessity of the parties. * * *" [39 CFR § 150.414(b).]

There is much to be said for the view that "Big" Government, with its unlimited resources, should be willing to contest with "little" citizen on the latter's own ground. Under this view, plaintiff's mere request to transfer the hearing across the continent to Los Angeles should have been sufficient for a hearing examiner "having due regard" for either convenience or necessity of the parties. [See Bowles v. Richards, D.C.Ore.1945, 63 F.Supp. 946, 947, note 2.]

Convenience aside, the obvious expense to plaintiff for transportation and maintenance of himself, his attorney and his witnesses on a round-trip journey of some 5,000 miles from Los Angeles to the Nation's Capitol should have been sufficient to prompt the transfer, if the Hearing Examiner had shown "due regard for the * * * necessity of the parties" as the regulations required him to do.

"Due regard" like "fairness" is a term of varying content. What is "fair" in one situation may be grossly unfair in another; determination must be made in the light of reason and common sense and the circumstances of the case. So with "due regard." Cf. Joint Anti-Fascist Refugee Committee v. McGrath, supra, 341 U.S. at page 136, 162–172, 71 S.Ct. 624.

The "fair" hearing essential to meet minimum requirements of any accepted notion of due process includes not only rudimentary fairness in the conduct of the hearing when and where held, but also a reasonably fair opportunity to be present at the time and place fixed, to cross-examine any opposing witnesses, to offer evidence, and to be heard at least briefly in defense. See Reilly v. Pinkus, supra, 338 U.S. at pages 275–276, 70 S.Ct. 110; Backmer v. United States, 1932, 284 U.S. 421, 440, 52 S.Ct. 252, 76 L.Ed. 375; Hagar v. Reclamation District, 1884; 111 U.S. 701, 708, 4 S.Ct. 663, 28 L.Ed. 569.

Had the Government moved judicially in a court of law, instead of administratively in an executive department, to put plaintiff out of business, it would be shocking in the extreme to learn of a summons by the court purporting to call upon him to leave his residence in California and cross the continent to Washington, D. C. with his witnesses and his attorney, or else default in the defense of his property right. See 28 U.S.C.A.

§§ 1391–1406; Koster v. Lumbermens Mutual Co., 1947, 330 U.S. 518, 527, 67 S.Ct. 828, 91 L.Ed. 1067; Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 507–509, 67 S.Ct. 839, 91 L.Ed. 1055; Neirbo Co. v. Bethlehem Corp., 1939, 308 U.S. 165, 168–169, 60 S.Ct. 153, 84 L.Ed. 167; General Inv. Co. v. Lake Shore Ry., 1922, 260 U.S. 261–275, 43 S.Ct. 106, 67 L.Ed. 244. It is equally shocking to learn that an administrative tribunal has so disregarded the necessity and convenience of a party defendant in an administrative proceeding. See: Ng Fung Ho v. White, 1922, 259 U.S. 276, 285, 42 S.Ct. 492, 66 L.Ed. 938; United States v. Woo Jan, 1918, 245 U.S. 552, 556, 38 S.Ct. 207, 62 L.Ed. 466.

■ Failing to have "due regard for the convenience and necessity of the parties" in the administrative proceedings involved at bar, the Hearing Examiner violated the mandate of § 150.414(b) of the regulations of the Postmaster General. [39 CFR § 150.414(b).] These administrative regulations, made in pursuance of constitutional statutory authority are valid and have "the force and effect of law" U. S. ex rel. Accardi v. Shaughnessy, 1954, 347 U.S. 260, 265, 74 S.Ct. 442; Ex parte Reed, 1879, 100 U.S. 13, 22, 25 L.Ed. 538, the same force as though prescribed in terms by the statute. Atchison, T. & S. F. Ry. v. Scarlett, 1937, 300 U.S. 471, 474, 57 S.Ct. 541, 81 L.Ed. 748; cf. 5 U.S.C. § 1004(a).

■ ■ Violation of valid administrative regulations, even by the administrator himself, constitutes in legal effect a violation of the statute. U. S. ex rel. Accardi v. Shaughnessy, supra, 347 U.S. 260, 74 S.Ct. 442; Chapman v. Sheridan-Wyoming Co., 1950, 338 U.S. 621, 629, 70 S.Ct. 392, 94 L.Ed. 393; Bridges v. Wixon, 1945, 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103. And where administrative regulations set a higher standard of procedural due process than that required by the Constitution or the statute, violation amounts to a denial of administratively-established due process of law. Cf. U. S. ex rel. Accardi v. Shaughnessy, supra, 347 U.S. 260, 74 S. Ct. 442; Bridges v. Wixon, supra, 326 U. S. at page 153, 65 S.Ct. 1443.

■ At the trial of the case at bar, evidence of plaintiff and his medical witnesses was received for the limited purpose of permitting plaintiff to show that denial of his application to transfer the hearing to Los Angeles was, under the circumstances, not merely a technical denial of procedural due process, but resulted in material prejudice to his defense in the administrative proceedings. Cf. Coe v. Armour Fertilizer Works, 1915, 237 U.S. 413, 424, 35 S.Ct. 625, 59 L.Ed. 1027; Rees v. City of Watertown, 1873, 19 Wall. 107, 86 U.S. 107, 123, 22 L.Ed. 72. It was sufficient for such purpose merely to show that the Hearing Examiner's rejection of the application to transfer had the effect of denying to plaintiff the right of cross-examination on the opinions expressed by the medical witness called to give testimony in support of the administrative complaint. Cf. Reilly v. Pinkus, supra, 338 U.S. at pages 275–276, 70 S.Ct. 110; Shaw v. Duncan, supra, 194 F.2d at pages 782–783.

Denial of administrative procedural due process to the plaintiff at bar makes void the challenged order which the Postmaster General based upon the proceedings had before the Hearing Examiner. See Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576; Ng Fung Ho v. White, supra, 259 U.S. at page 284, 42 S.Ct. 492; Knox v. United States, 9 Cir., 1952, 200 F.2d 398; Door v. Donaldson, 1952, 90 U.S.App.D.C. 188, 195 F.2d 764; Walker v. Popenoe, 1945, 80 U.S.App.D.C. 129, 149 F.2d 511.

For the reasons stated Post Office Department Fraud Order No. 55291 must be declared void, and a permanent injunction will be granted restraining defendant from enforcing the order.

Plaintiff will lodge with the Clerk within five days proposed findings of fact, conclusions of law and judgment to be settled pursuant to local rule 7.