UNITED STATES of America,
Plaintiff–Appellee,

v.

Frank FREDMAN,
Defendant–Appellant.

No. 87–5120.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1987.

Decided Dec. 2, 1987.

Carlton F. Gunn, Deputy Federal Public Defender, Los Angeles, Cal., for defendant-appellant.

Jeffrey C. Eglash, Asst. U.S. Atty., Crim. Div., Los Angeles, Cal., for plaintiff-appellee.

Before TANG, SCHROEDER and BEEZER, Circuit Judges.

BEEZER, Circuit Judge:

Frank Fredman appeals his conviction for possession of unregistered firearms in violation of 26 U.S.C. § 5861(d). Fredman claims a "protective sweep" of his home violated his Fourth Amendment rights and was not justified by exigent circumstances. Fredman also claims that component parts of a commercial explosive found at his residence fail to constitute "firearms" under 26 U.S.C. § 5861(d). We reverse the conviction without addressing Fredman's Fourth Amendment claim.

On issuance of a proper search warrant, the police searched Fredman's residence for firearms. The police recovered two bundles of commercial detonator cord, three commercial detonator fuses, and two

commercial igniters located in an open safe. These components of a commercial explosive were not registered with the National Firearms Registration and Transfer Record. These components form the basis of Fredman's indictment for possession of unregistered "firearms."

Fredman entered a not guilty plea. His trial resulted in a conviction for possession of unregistered "firearms" in violation of 26 U.S.C. § 5861(d). Fredman was sentenced to one year and six months imprisonment.

## I

We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review de novo the district court's conclusion that the unassembled commercial explosives constitute a "destructive device" and, therefore, a "firearm" under 26 U.S.C. § 5861(d). *United States v. Mehrmanesh*, 689 F.2d 822, 827 (9th Cir. 1982). The district court's findings of fact will be sustained unless clearly erroneous. *United States v. Good*, 780 F.2d 773, 774 (9th Cir.), *cert. denied*, 475 U.S. 1111, 106 S.Ct. 1523, 89 L.Ed.2d 920 (1986).

## II

Fredman claims that components of a commercial explosive, found in his residence pursuant to a valid search warrant, do not constitute "firearms" under 26 U.S.C. § 5861(d).

26 U.S.C. § 5861(d) states: "It shall be unlawful for any person ... to ... possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." 26 U.S.C. § 5845(a)(8) defines a "firearm" as "a destructive device."

26 U.S.C. § 5845(f)(3) defines a "destructive device" as "any combination of parts either designed or intended for use in converting any device into a destructive device

as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled."

Subparagraph (1), 26 U.S.C. § 5845(f), to which subparagraph (3) refers, includes, *inter alia*, "any explosive, incendiary, or poison gas (A) bomb, (B) grenade ... (F) or similar device."

Finally, subparagraph (3), 26 U.S.C. § 5845, also contains an express exclusion of certain devices. It states: "The term 'destructive device' shall *not* include any device which is neither designed nor redesigned for use as a weapon." (Emphasis supplied.)

Thus, the narrow question is whether seven components of a dangerous commercial explosive[1] found in a safe at Fredman's residence[2] fall within the statutory definition of a "destructive device," defined as "any combination of parts either designed or intended for use in converting" the same into a device similar to an explosive or incendiary bomb or grenade. 26 U.S.C. § 5845(f).

The record clearly establishes that the seized components are not "designed ... for use in converting" the same into an explosive or incendiary bomb or grenade. We cannot conclude that the components are designed as a weapon, since it is admitted that the seized explosive components are designed for use as commercial blasting components.

The government contests this conclusion. The government asserts that "[f]rom an objective standpoint, [components of commercial] explosives by design are a destructive device." The government argues that either the components of a commercial explosive or a wholly assembled commercial explosive is, by design, a destructive device "similar" to an "explosive [or] incendiary ... bomb [or] grenade" within the meaning of 26 U.S.C. § 5845(f).

---

**1.** The record establishes beyond any reasonable doubt that the potential for property damage and physical harm posed by the eventual assembly of these component parts, once connected to a source of electrical current, would be significant.

**2.** The component parts consisted of two bundles of commercial detonator cord, three commercial detonator fuses, and two commercial igniters.

In those cases involving possession of commercial explosives where we have determined that such explosives *do* constitute a "destructive device" under 26 U.S.C. § 5845(f), we have required proof of intent. Moreover, proof of intent must be established beyond a reasonable doubt. *United States v. Peterson*, 475 F.2d 806, 810 (9th Cir.1973) (government must prove "defendants intended to use and did convert the materials into a bomb, grenade ... or [similar] 'destructive device'" if commercial explosive is to meet statutory definition of 'destructive device'); *United States v. Oba*, 448 F.2d 892, 895 (9th Cir.1971) (assembled commercial explosive, including dynamite wrapped in copper wire, equipped with fuse and blasting caps, in combination with admission of "intent ... to dynamite City of Eugene, Oregon" does constitute a "destructive device"); *United States v. Loud Hawk*, 628 F.2d 1139, 1146 (9th Cir.1979) (seven cases of dynamite, with 150 blasting caps, nine hand grenades, pocket watches with faces drilled to permit preparation of time bombs, plus other bomb-making equipment such as batteries, wire and cable, after a chase and exchange of shots, sufficiently prove intent to use commercial explosives as a weapon).

■ As the foregoing cases establish, mere components of commercial explosives, absent proof of intent to use such components as a weapon, fail to qualify as a "destructive device" within the meaning of 26 U.S.C. § 5845. Intent is a necessary element, absent proof of original design or redesign for use as a weapon.

■ The government's indictment under 26 U.S.C. § 5861(d) is not invalid for failure to aver intent expressly. While intent is an essential element of the offense under 26 U.S.C. § 5861, we infer the averment of intent from the definition of "firearm" contained in section 5845(f)(3). *See, e.g., Peterson*, 475 F.2d at 810. *See also United States v. Fine*, 413 F.Supp. 728, 737 (D.C. Wis.1976).

Although not expressly averred, intent must still be proved. We have adhered to one interpretation of the intent requirement in all prior cases. That interpretation focuses on "intent to use" rather than on "intent to convert" for use. In *United States v. Reed*, 726 F.2d 570 (9th Cir.1984), we reversed a conviction under section 5861(d) premised on the language of section 5845(f) because "we conclude[d] that a reasonable jury could not have found beyond a reasonable doubt that [the 'destructive devices'] were in fact *designed or used* as weapons." *Id.*, at 576. (Emphasis added.)

Similarly, in *Peterson*, 475 F.2d at 810, we stated that one "material element" of a violation of section 5861(d) was proof that the defendants "intended *to use and did convert* the materials into an incendiary bomb, grenade ... or 'destructive device.'" (Emphasis added.) *See also United States v. Morning Star*, 456 F.2d 278, 281–82 (4th Cir.1972).

■ In this case, the district court made a special finding that "the government did not prove beyond a reasonable doubt that Fredman intended to use the explosives as a weapon." In our view, such proof is essential for conviction.

Since the district court's special finding on intent is not clearly erroneous, we conclude that the requisite "intent to use" has not been established.

Unlike the devices found in *Oba, Reed,* or *Peterson*, the component parts of the commercial explosive in this case were not assembled. Furthermore, the government's argument that the commercially available components "were ... a bomb which could have been accidently set off in the event of a fire" is not relevant to this inquiry. Possession of an enclosed container of gasoline in a garage could, under such an interpretation and without proof of intent, be termed criminal possession of a "bomb."

Unlike the explosive components in *Loud Hawk*, 628 F.2d at 1142, the parts found in Fredman's residence were not being transported with obvious intent to detonate; they were not accompanied by "bomb-making equipment;" they were not accompanied by "hand grenades"; they were not accompanied by any other indicia of intent to use as a weapon, such as "pocket

watches with the faces drilled to permit preparation of time bombs"; and they were not seized after a chase, nor after an exchange of gunshots. Each of these factors, in *Loud Hawk*, contributed to the conclusion that the disassembled parts of the commercial explosives were "intended for use" as a weapon. Such compelling indicia of criminal intent are markedly absent in this case.

Despite this body of contrary precedent, the government still claims: (1) that proof of *intent to convert* for use as a weapon satisfies the statutory intent requirement, and (2) that the government has proved beyond reasonable doubt Fredman's intent to convert the components for use as a weapon.

The statute, 26 U.S.C. § 5845(f)(3), is admittedly ambiguous in defining the intent element. Specifically, the statute fails to delineate between two types of intent—"intent to use" and "intent to convert" for use. Relevant precedent favors the former statutory interpretation. We continue to agree with that interpretation.

However, for the purpose of deciding whether the requisite intent was proved in this case, the statute is clear. The statute identifies one category of destructive devices to which its prohibition *shall not* apply. The statute states: "The term 'destructive device' shall not include any device which is neither designed nor redesigned for use as a weapon."

Beyond any reasonable doubt, the devices identified in *Loud Hawk, Oba,* and *Peterson* were designed or redesigned for use as weapons. Our review of the record here will not support such a conclusion. There is simply insufficient evidence on the record to support, beyond a reasonable doubt, the conclusion that the commercial explosive components in Fredman's residence were originally "designed or redesigned for use as a weapon," 26 U.S.C. § 5845(f)(3), much less that these unassembled components of a commercial explosive were intended for use as a weapon or intended to be converted for use as a weapon.

In *United States v. Schofer,* construction explosives not designed, redesigned, used, or intended for use as a weapon were not, beyond a reasonable doubt, "destructive devices." *United States v. Schofer,* 310 F.Supp. 1292, 1297–98 (E.D.N.Y.1970). The facts in *Schofer* parallel the facts in this case with sufficient closeness to compel a similar conclusion. *See also, United States v. Posnjak,* 457 F.2d 1110, 1119 n. 10 (2d Cir.1972) (citing to *United States v. Davis,* 313 F.Supp. 710 (D.Conn.1970)).

As we said in *Reed,* 726 F.2d at 596, where we were confronted with a set of unassembled parts capable of being assembled into an explosive device, under circumstances much more threatening than those surrounding seizure in this case, a reasonable factfinder "could not have found beyond a reasonable doubt that [the commercially available components] were in fact designed or used as weapons." *Reed,* 726 F.2d at 576.

On the record before us, the evidence is not sufficient to find beyond a reasonable doubt that Fredman intended to use the commercially available components as a weapon or for conversion into a weapon. Ambiguity in the intent requirement is ultimately resolved by the straightforward statutory prohibition on conviction for possession of a device "neither designed nor redesigned for use as a weapon." 26 U.S. C. § 5845(f)(3).

We conclude that unassembled components of a commercial explosive seized at Fredman's residence do not qualify as a "firearm" absent proof, beyond a reasonable doubt, that those components were intended for use, designed, or redesigned as a weapon. We need not reach the Fourth Amendment claim.

REVERSED.