8 F.3d 32
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul ISEDA, Defendant-Appellant.
 No. 92-50274.
 United States Court of Appeals, Ninth Circuit.
 Submitted March 1, 1993.*
Decided Sept. 20, 1993.
 
 Before: D.W. NELSON, WIGGINS, and LEAVY, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Paul Iseda, a movie pyrotechnics expert, appeals from his conviction and sentence for knowingly transferring, without written application, an incendiary grenade and combination of parts[1] that was designed and intended for use as a destructive device in violation of 26 U.S.C. § 5861(e), and possession of such items in violation of 26 U.S.C. § 5861(d) of the National Firearms Act. Iseda contends the C-4 in the kit was erroneously received in evidence over his chain of custody objection, that the evidence of intent that the kit be used as a "destructive device" was insufficient, and that he is entitled to a new trial on the count charging the transfer of the incendiary grenade and kit because the district court failed to give a specific unanimity instruction. Iseda also challenges the district court's two-point upward adjustment for "special skill" under U.S.S.G. § 3B1.3.
 
 I. Jurisdiction
 
 3
 The Government argues that we lack jurisdiction over all the issues except sentencing because the notice of appeal does not indicate that Iseda appeals his conviction. However, because the Government "argued the merits fully in its brief, it has not been prejudiced by the appellant's failure to designate specifically an order which is subject to appeal." United States v. Yee Soon Shin, 953 F.2d 559, 560 (9th Cir.1992). We may consider the nonsentencing related issues raised by the appeal. See id.
 
 II. Chain of Custody
 
 4
 Iseda contends the Government failed to satisfy its burden of a prima facie showing that, at the time of testing, the explosive was in substantially the same condition as the putty-like substance Iseda transferred and possessed. The trial court's determination of whether there is a break in the chain of custody is reviewed for abuse of discretion. United States v. Harrington, 923 F.2d 1371, 1374 (9th Cir.), cert. denied, 112 S.Ct. 164 (1991).
 
 
 5
 Iseda focuses on the time during which an envelope containing samples of the explosive was inside a manila folder on top of the desk of Los Angeles Deputy Sheriff Richard Love for pick-up by an agent of the United States Bureau of Alcohol, Tobacco, and Firearms (ATF). Iseda claims both the explosive and the chemist's analysis of it were inadmissible because the envelope containing the explosive was not sealed and the Government made no showing that only ATF employees had access to it.
 
 
 6
 If there is a reasonable probability that the item of evidence has not been changed in important respects, the district court may admit the evidence. See id. An important factor to consider is the likelihood of intermediaries tampering with the evidence. United States v. Dickerson, 873 F.2d 1181, 1185 (9th Cir.1988). If there is some evidence of tampering, the Government must show that acceptable precautions were taken to maintain the evidence in its original state. Id.
 
 
 7
 Iseda points to no evidence of tampering. In the absence of any evidence of tampering, a presumption exists that public officers "properly discharge[d] their official duties." Gallego v. United States, 276 F.2d 914, 917 (9th Cir.1960). The district court did not abuse its discretion in admitting the C-4 and detonating cord.
 
 III. National Firearms Act Violation
 
 8
 Iseda contends there is insufficient evidence to prove that he intended the kit to be used as a "destructive device" within the meaning of 26 U.S.C. § 5645(f). Our review of this issue is not de novo, as this case does not involve the interpretation of the language of the NFA. Compare United States v. Fredman, 833 F.2d 837, 838 (9th Cir.1987), citing United States v. Mehrmanesh, 689 F.2d 822, 827 (9th Cir.1982). Rather, we must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 9
 An application to transfer the explosives kit was required if that kit was a "firearm" under federal law. See 26 U.S.C. § 5861(d) and (e). The Government was required to prove that Iseda intended the kit to be used as a destructive device. Our previous cases examine the apparent purpose for which the device was created and the manner of its actual use.[2]
 
 
 10
 At trial, Iseda argued the kit was not a firearm because he did not intend it to be used as a destructive device; rather, he believed the kit would be used for "recreational" purposes such as blowing up cactuses in the desert. On appeal, Iseda contends that his conversation with ATF agent Michael Halualani, explaining how he and his friends could use the kit to blow up a car, is insufficient to show Iseda's intent at the time of the possession and transfer of the kit. Iseda points out that Halualani initiated the conversation, which Iseda believed was hypothetical. Iseda contends there is no evidence to contradict his belief, as "nothing was ever blown up."
 
 
 11
 There is merit in Iseda's contention that his conversation with Halualani, which occurred one month after the transfer of the kit, does not necessarily show his intent at the time of the transfer. Nonetheless, given the explosive nature of the kit's parts and Iseda's transfer of numerous other military-style weapons, the jury could reject Iseda's contention that he thought the kit was being purchased for "recreational" purposes. While there was apparently conflicting testimony regarding the commercial availability of the particular explosive, Iseda concedes it is the type not normally used for commercial demolition purposes. Rather, the explosive is a type intended for military use. There was sufficient evidence of Iseda's intent that the kit be used as a destructive device.
 
 
 12
 IV. Failure to Give Specific Unanimity Instruction
 
 
 13
 Iseda contends there is no way to know if the jury agreed unanimously on the incendiary grenade or improperly returned a verdict based upon the combination of parts charged. Since the jury was not instructed to differentiate between the kit and incendiary grenade, it "may have reached its conclusion solely on the combination of parts without sufficient evidence of the requisite intent." Iseda also argues that some jurors may have rendered the verdicts based upon the incendiary grenade while others rendered verdicts based on the kit.
 
 
 14
 Iseda did not request a specific unanimity instruction. We therefore review the district court's failure to give such an instruction for plain error. United States v. Kessi, 868 F.2d 1097, 1102 (9th Cir.1989).
 
 
 15
 Where it appears " 'there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts,' " an instruction should be given to the effect that the jury may not convict unless it " 'unanimously agree[s] to a particular set of facts.' " United States v. Anguiano, 873 F.2d 1314, 1319 (9th Cir.) (quoting United States v. Echeverry, 719 F.2d 974, 975 (9th Cir.1983)), cert. denied, 493 U.S. 969 (1989). Jury confusion is demonstrated in three ways: (1) the jury actually indicates, by a note to the court, that it is confused about the nature of the conspiracy charged; (2) the indictment is sufficiently broad and ambiguous so as to present a danger of jury confusion; and (3) the evidence is sufficiently factually complex to indicate that jury confusion may occur. Id. at 1319-20.
 
 
 16
 Iseda concedes that the first factor is inapplicable. With respect to the second factor, the counts in the indictment for which Iseda was convicted were straightforward, involving a single transaction and only two firearms. Finally, this case was not factually complex. Compare United States v. Lemon, 824 F.2d 763, 764 (9th Cir.1987). We cannot say there was any error, particularly where we hold that the evidence was sufficient to allow the jury to find that the kit was a firearm.
 
 V. Special Skill Adjustment
 
 17
 U.S.S.G. § 3B1.3 provides in relevant part:
 
 
 18
 If the defendant ... used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels.
 
 
 19
 U.S.S.G. § 3B1.3 (1992). Application Note 2 to Section 3B1.3 states that "special skill" refers to "a skill not possessed by members of the general public and usually requiring substantial education, training or licensing"-- e.g., "pilots, lawyers, doctors, accountants, chemists, and demolition experts."
 
 
 20
 The district court made a two-point upward adjustment for the use of a special skill, following the presentence recommendation. The presentence report said: "As a pyrotechnics expert, Iseda utilized his special skill in describing to the [undercover agent (UA) ] the means by which a car bomb could be constructed, therefore, a two point increase in base level is appropriate."
 
 
 21
 The parties dispute the standard of review of the district court's imposition of the special skill adjustment. Iseda argues that the question of whether the evidence is sufficient to show the use of a special skill is a question of the application of the Guidelines and is reviewed de novo. See United States v. Hill, 915 F.2d 502, 505 (9th Cir.1990). The Government contends that we are to determine the legal meaning of the term "special skill" de novo, but review for clear error the district court's application of U.S.S.G. § 3B1.3 to the circumstances of this case. The Government relies on United States v. Connell, 960 F.2d 191, 197-98 (1st Cir.1992).
 
 
 22
 We need not reach this issue, as there are no facts in dispute to review for clear error. The district court made no specific finding except "that the computation under the Guidelines is appropriate and should not be changed in any way." The district court made no finding beyond the facts reported in the presentence report; thus, we are confronted only with the task of reviewing the district court's application of the sentencing guidelines. The parties agree that this issue is reviewed de novo.
 
 
 23
 The Government argues that Iseda used his access to weapons as a firearms expert and dealer to assemble the components of the kit.[3] The Government made no such argument to the district court. The Government further contends that an upward adjustment under section 3B1.3 is warranted because only someone with Iseda's experience and training would be able to instruct the UA in how to construct a car bomb from the explosives.
 
 
 24
 We disagree. Iseda was convicted of knowingly transferring an incendiary grenade and a kit on February 26, 1991. He also was convicted of possessing these items on the same day. Twenty-two days later, on March 20, 1991, Iseda told an UA how to use the kit to blow up a car. The presentence report premised the upward adjustment under section 3B1.3 on the fact that, as a pyrotechnics expert, Iseda utilized his special skill "in describing to the UA the means by which a car bomb could be constructed." The district court adopted this recommendation, stating simply that "the computation under the Guidelines is appropriate and should not be changed in any way."
 
 
 25
 The only thing the district court found Iseda used his special skill to do was to tell the UA how to blow up a car. However, this conversation occurred three weeks after the offenses were complete and could not have facilitated their commission. There is no contention that Iseda used his special skill to conceal the offenses. Rather, the Government contends that only someone with Iseda's special skill would know what would be required to assemble the kit before it was possessed or transferred. That may be true, but the district court made no such finding nor does the presentence report suggest that was the case.
 
 
 26
 Iseda's conviction is AFFIRMED. The district court's two-point upward adjustment for special skill under U.S.S.G. § 3B1.3 is REVERSED and this case is REMANDED for resentencing.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The combination of parts consisted of seventy feet of detonating cord, one-half pound of Composition 4 (C-4) high explosives, and three blasting caps. Throughout this memorandum this combination of parts will be referred to as "the kit."
 
 
 [2]
 Compare United States v. Fredman, 833 F.2d 837 (9th Cir.1987) (components of a dangerous commercial explosive, consisting of two bundles of commercial detonator cord, three commercial detonator fuses, and two commercial igniters, found in a safe in defendant's house, not a destructive device where components designed for use as commercial blasting components); United States v. Reed, 726 F.2d 570 (9th Cir.) (paper-wrapped, gasoline-filled beverage cans with holes poked in the top used in burning of restaurant did not constitute destructive devices where cans not in fact used as weapons nor could be absent serious injury to person using them), cert. denied, 469 U.S. 871 (1984); with United States v. Hedgcorth, 873 F.2d 1307 (9th Cir.) (examining 18 U.S.C. § 921(a)(4) and finding several firebombs patterned after sophisticated military ordnance and designed to produce "napalm-type" effect when ignited and used in two automobile firebombings and attempted firebombing of house a destructive device), cert. denied, 493 U.S. 857 (1989); United States v. Loud Hawk, 628 F.2d 1139, 1146 (9th Cir.1979) (seven cases of dynamite, with 150 blasting caps, nine hand grenades, pocket watches with faces drilled to permit preparation of time bombs, plus other bomb-making equipment such as batteries, wire and cable, after a chase and exchange of shots, sufficiently prove intent to use commercial explosives as a weapon), cert. denied, 445 U.S. 917 (1980); United States v. Peterson, 475 F.2d 806 (9th Cir.) ("hostile destructive device likened to a Molotov cocktail of military ingenuity but a commonly used civilian weapon of crime and violence" a destructive device under section 5845(f)), cert. denied, 414 U.S. 846 (1973); United States v. Oba, 448 F.2d 892, 894 (9th Cir.1971) (seven sticks of dynamite wrapped in copper wire and equipped with fuse and blasting caps a destructive device, where defendant stated his intent was to dynamite the city of Eugene, Oregon, and admitted that purpose of the device was to bomb and destroy the property of others), cert. denied, 405 U.S. 935 (1972)
 
 
 [3]
 The Government contends:
 Only someone in defendant's special position as a federal firearms licensee would have access to the explosives and tools that made up the kit. Only someone with defendant's special training and experience would know what the various explosives were and what was required to assemble the explosives kit.
 Appellee's Brief at 49-50.