114 F.3d 1196
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Raymond D. CHEELY, Jr., Defendant-Appellant. (Two Cases)
UNITED STATES of America, Plaintiff-Appellee,
v.
Joseph E. RYAN, Defendant-Appellant. (Two Cases)
UNITED STATES of America, Plaintiff-Appellant,
v.
Joseph E. RYAN, Defendant-Appellee. (Two Cases)
 No. 95-30248, 95-30257, 95-30282, 95-30288, 95-30289 and 95-30290.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 11, 1997.
Decided May 19, 1997.
 
 Before: WRIGHT, REINHARDT and THOMAS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The parties are familiar with the facts of this case, and we will not restate them here. After thorough consideration of the record, the briefs and oral argument, we affirm the convictions and sentences of defendants Ryan and Cheely. We vacate the restitution order that the district court imposed on defendant Ryan under the Victim and Witness Protection Act.
 
 Evidentiary Issues
 
 3
 We review claims of evidentiary error under an abuse of discretion standard. United States v. Brooke, 4 F.3d 1480, 1487 (9th Cir.1993). Those decisions are subject to the harmless error rule and we may reverse for an abuse of discretion only if the nonconstitutional error more likely than not affected the verdict. United States v. Karterman, 60 F.3d 576, 578 (9th Cir.1995); Fed.R.Ev. 103.
 
 1. Rule 901--Authentication of Catalogs
 
 4
 Cheely asserts that the trial court erred by failing to authenticate four catalogs. Three of the four catalogs were addressed to R.D. Cheely at his prison address. During trial, Inspector Lott Steffey testified that one of Cheely's fellow prisoners turned the catalogs over to him. Rule 901 states that authentication requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Ev. 901. The testimony of "a witness with knowledge" can authenticate a document. United States v. Workinger, 90 F.3d 1409, 1415 (9th Cir.1996). Based on Steffey's testimony and the address labels, the district court's admission of the catalogs was not an abuse of discretion.
 
 2. Rule 404(a)--Leadership Testimony
 
 5
 Cheely argues that the district court erred by admitting witness testimony concerning Cheely's leadership role in his relationships with Ryan and Douglas Gustafson. We disagree. Under Rule 404(a), a trial court may admit evidence of acts relevant to an issue at trial, "except where the evidence proves only the defendant's criminal disposition." United States v. McKoy, 771 F.2d 1207, 1213 (9th Cir.1985). Cheely's relationship with the co-conspirators was relevant to the government's theory of conspiracy, which could not be adequately developed in the absence of the historical background of Cheely's previous relationships with the co-conspirators.
 
 3. Rule 403
 
 6
 Cheely argues that the district court erred by admitting: (1) inflammatory character testimony by witness John Lewis; (2) crime scene photographs of bombing victim David Kerr; and (3) a recorded emergency room interview with bombing victim Michelle Kerr. Federal Rule of Evidence 403 allows a district court to exclude evidence if, "its probative value is substantially outweighed by the danger of unfair prejudice." We review a district court's decision balancing the probative value of evidence against its prejudicial effect for an abuse of discretion. United States v. Erickson, 75 F.3d 470, 476 (9th Cir.), cert. denied sub. nom. Great Falls Eye Surgery Ctr. v. United States, 116 S.Ct. 1853 (1996).
 
 
 7
 Admission of the Lewis testimony was not an abuse of discretion. The district court admitted the testimony because Cheely suggested to Lewis that he (Cheely) was unable to use the prison phones "because they are afraid I will have another bomb sent." Cheely complains of the admission of Lewis's insulting remarks to Cheely. Lewis's scabrous epithets to Cheely did not render the testimony unfairly prejudicial. The statements were peripheral to the purpose of the testimony, and, if anything, served only to undermine Lewis's credibility by showing bias.
 
 
 8
 Cheely also asserts that the district court abused its discretion by admitting photographs depicting post-blast injuries to Mr. Kerr. We disagree. Such photographs need only be excluded if "their principal effect would be to inflame the jurors against the defendant because of the horror of the crime." Rivers v. United States, 270 F.2d 435, 437 (9th Cir.1959), cert. denied, 362 U.S. 920 (1960). Here, the admitted photographs had probative value: they assisted the Government pathologist in explaining and illustrating his findings. We note that the district court properly excluded additional photographs offered by the prosecution.
 
 
 9
 Finally, Cheely contends that the district court abused its discretion by admitting an audiotape of an emergency room interview with Michelle Kerr--despite the availability of a written transcript of the interview. Although the admission of the tape may have been only marginally probative, the district court did not abuse its discretion in determining its probative value outweighed its prejudicial effect.
 
 4. Rule 404(b)--Other Acts Evidence
 
 10
 Cheely argues that the district court erred under Rules 403 and 404(b) by allowing the following evidence: (1) evidence related to the highway shooting of Jeffrey Cain; (2) evidence regarding Cheely's participation in a 1990 burglary; (3) evidence regarding a "teddy bear bomb" given to Candy Sorenson; (4) Cheely's alleged threats to Ted Miller and Sorenson; (5) testimony from LaVon Hanna concerning a prior "bad act" of Cheely; and (6) evidence of Cheely's ownership of two firearms.
 
 
 11
 Federal Rule of Evidence 404(b) prohibits evidence of other crimes, wrongs, or acts "to prove the character of a person in order to show action in conformity therewith." Relevant evidence may also be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Ev. 403. A Rule 404(b) analysis does not apply when the evidence of other crimes or acts relates to the current charges. Evidence should not be treated as "other crimes" evidence when the evidence concerning the "other" act and the evidence concerning the crime charged are "inextricably intertwined." United States v. Warren, 25 F.3d 890, 895 (9th Cir.1994).
 
 
 12
 All of the evidence to which Cheely objects was relevant to the crimes Cheely is alleged to have committed. A complete understanding of why David Kerr was killed requires a detailed understanding of the highway shooting--and the events that both preceded and followed it. Moreover, Cheely's indictment includes more than just the 1991 bombing incident. Count 3 of the indictment charges Cheely with conspiracy to retaliate against numerous witnesses and others involved in his prosecution. Thus, the relationship between Cheely and the witnesses, prior acts involving Cheely and the witnesses, the prior testimony of those witnesses, and Cheely's threats to have witnesses shot are all direct evidence of Cheely's involvement in both the bombing and the conspiracy. Evidence of Cheely's ownership of the guns additionally shows that Cheely had the opportunity to carry out his threats. See Fed.R.Ev. 404(b). All of this evidence was properly admissible as direct evidence that is "inextricably intertwined" with the crimes alleged in Cheely's current prosecution.
 
 5. Cumulative Prejudice
 
 13
 At oral argument, counsel asserted that the alleged trial errors, while perhaps harmless when examined individually, amounted to cumulative prejudice and "trial by character assassination." However, absent even a single error in admission of evidence, a claim of cumulative prejudice will not lie. See, e.g., United States v. Gutierrez, 995 F.2d 169, 173 (9th Cir.1993).
 
 Brady Violations
 
 14
 Under Brady v. Maryland, 373 U.S. 83 (1963), the prosecution must disclose evidence that is both favorable to the accused and material either to guilt or to punishment. Harris v. Vasquez, 949 F.2d 1497, 1528 (9th Cir.1990), cert. denied, 503 U.S. 910 (1992). Evidence is material under Brady only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. Id. We review district court rulings on alleged Brady violations de novo. United States v. Alvarez, 86 F.3d 901, 903 (9th Cir.1996), cert. denied, 117 S.Ct. 748 (1997). A district court's denial of a new trial based on alleged Brady violations is also reviewed de novo. United States v. Steinberg, 99 F.3d 1486, 1489 (9th Cir.1996).
 
 
 15
 Appellants assert that the district court erred by denying their motions for a Brady violation hearing and a new trial after they discovered that the Government had failed to disclose reward money paid to witnesses Barbara Sheffer and Frank Adams. Their claims are unpersuasive. The Government's failure to disclose information regarding Sheffer and Adams was not material to the case and certainly does not undermine confidence in the outcome of the trial. First, the Government never planned to call--and in fact did not call--Sheffer as a witness. More importantly, Cheely's counsel already knew that Sheffer had applied for a reward, and at the trial, defense counsel questioned Sheffer's husband about his efforts to secure an award for his wife. Information about Adams' application for award money was not available to the Government at Cheely's trial because Adams did not apply for award money until two weeks after the trial ended. Moreover, the defense offered significant impeachment evidence, including Adams' past criminal history, and testimony from Adams' family that Adams was a habitual liar and a thief. Although the Government did not disclose the promise of a $1750 payment, it did disclose--and Adams was questioned about--Government payments totalling $520. Given the overwhelming amount of impeaching evidence against Adams, it is unlikely that the disclosure of one additional payment would have changed the jury's view on Adams' credibility. More importantly, other witnesses corroborated the most significant part of Adams' testimony.
 
 
 16
 Confrontation Clause and Compulsory Process Rights
 
 
 17
 We review a trial court's decision to limit the scope of cross-examination for abuse of discretion. United States v. Dudden, 65 F.3d 1461, 1469 (9th Cir.1995). We review alleged violations of the Confrontation Clause de novo. United States v. Contreras, 63 F.3d 852, 857 (9th Cir.1995). However, we will hold that the district court violated the Confrontation Clause only if we conclude that the district court denied the jury "sufficient information to appraise the biases and motivations of the witness." United States v. Jenkins, 884 F.2d 433, 436 (9th Cir.), cert. denied, 493 U.S. 1005 (1989).
 
 
 18
 Appellants first assert that the district court erred under Federal Rule of Evidence 609(d) by excluding witness Frank Adams' juvenile conviction for first-degree murder. We disagree. Jurors were "in possession of sufficient information upon which to make a discriminating appraisal of the subject matter at issue." See Bright v. Shimoda, 819 F.2d 227, 228 (9th Cir.1987), cert. denied, 485 U.S. 970 (1988).
 
 
 19
 Cheely additionally argues that the trial court violated his Confrontation Clause rights by restricting his questioning of Gustafson-Barnett concerning a sworn affidavit. Gustafson-Barnett stated three times that she did not read the affidavit. Defense counsel's repetitive questioning on this matter was unnecessary, as the jury already had "sufficient information to appraise the biases and motivations of the witness." See Jenkins, 884 F.2d at 436.
 
 
 20
 Finally, Cheely asserts that the district court erred by not allowing friends of Cheely's father, Skip Cheely, to testify about Skip's character and experience with explosives. However, as the trial court properly noted, Skip Cheely was not on trial. He was never alleged to be a co-conspirator in this case, and the testimony of the requested witnesses was immaterial.
 
 
 21
 Jury Instructions for Count 6 of Ryan's Indictment
 
 
 22
 We review a district court's formulation of the jury instructions for an abuse of discretion. United States v. Chastain, 84 F.3d 321, 323 (9th Cir.1996). Whether a jury instruction misstates the elements of a statutory crime is a question of law which we review de novo. United States v. Tagalicud, 84 F.3d 1180, 1183 (9th Cir.1996). In reviewing jury instructions, we must determine whether the jury instructions as a whole are misleading or inadequate to guide the jury's deliberation. United States v. de Cruz, 82 F.3d 856, 864 (9th Cir.1996). A single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge. United States v. Harrison, 34 F.3d 886, 889 (9th Cir.1994).
 
 
 23
 Ryan asserts that the jury instructions improperly dispensed with the mens rea requirement of 28 U.S.C. § 5861(d), and that the trial court's response to the jury's question concerning the legal definition of a firearm allowed Ryan to be convicted on a theory of "strict liability." Ryan argues that the testimony merely established that he knew someone was going to make a bomb.
 
 
 24
 Ryan's argument misstates the Government case. The Government argued that Ryan was guilty of aiding and abetting. With respect to that charge, the court instructed the jury that "[i]t is not enough that the defendant ... unknowingly or unintentionally did things that were helpful to the principal. The evidence must show beyond a reasonable doubt that the defendant acted with the knowledge and intent of helping another commit the principal crime." The court also included in its instructions that the jury must take the instructions "as a whole." There is, of course, a risk that jurors may take a single instruction given after days of deliberation out of context. However, in this case, the court again admonished the jury to take the answer "in light of all the instructions" when giving the additional instruction. Thus, taking the additional instruction in context, we believe the district court adequately instructed the jury on intent.
 
 
 25
 Ryan also contends that the court's supplemental instruction allowed the jury to convict him of a crime with which he was not charged--possession of bomb parts. The dissent examines the pattern of jury verdicts and concludes that their inconsistency proves Ryan correct. The course of events is troubling, but in the end, we believe the district court did not abuse its discretion in giving the supplemental instruction in the context of all of the instructions.
 
 
 26
 A court may not upset a jury's verdict on one count of an indictment merely because the jury returned an inconsistent verdict on another count. See, e.g., United States v. Powell, 469 U.S. 57, 66 (1984). In the "limited circumstances" of Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 896-97 (9th Cir.1997), examining the pattern of jury verdicts was proper. In Westinghouse, the jury returned separate verdicts for each claim and affirmative defense, and the court erroneously instructed the jury on the elements of one of the claims. Here, the court's supplemental instruction was not erroneous because it contained language taken directly from 18 U.S.C. § 921(a)(4)(C). Indeed, Ryan did not object to the specific language of the definition.
 
 
 27
 In the final analysis, concluding the jury convicted Ryan of possession of "bomb parts" rather than of a completed bomb requires the sort of speculation forbidden by Powell. The jury "through mistake, compromise, or lenity," may well have decided to convict Ryan of aiding and abetting possession of a completed bomb while acquitting him of the other charges. Powell, 469 U.S. at 65. Thus, although the dissent makes a very compelling argument, we conclude the district court did not abuse its discretion.
 
 
 28
 Restitution under the Victim and Witness Protection Act
 
 
 29
 The trial court ordered Ryan to pay $750,000 in restitution to Michelle Kerr and the estate of David Kerr. Ryan asserts that because he was convicted only of possession of an unlawful firearm, the restitution order was improper under the Victim and Witness Protection Act ("VWPA").
 
 
 30
 We review the legality of a restitution order de novo. United States v. Rutgard, 108 F.3d 1041 (9th Cir.1997). Under the VWPA, a court may order a defendant to make restitution to any victim of his offense. 18 U.S.C. § 3663(a)(1)(A). The VWPA defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." Id. § 3663(a)(2). The VWPA authorizes restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction." Hughey v. United States, 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990).
 
 
 31
 In this case, the "specific conduct" of Ryan's conviction was possession of an authorized firearm. Although in the causal chain, Ryan's possession of the bomb parts by itself did not directly and proximately cause the victims' bodily injury. Acts committed subsequent to the possession directly and proximately caused the harm. Ryan was not convicted of those actions. Thus, the trial court's order requiring Ryan to pay restitution did not satisfy the legal requirements of the VWPA. Accordingly, we reverse that portion of the judgment requiring Ryan to pay restitution.
 
 
 32
 Payment To Government for Prosecution Expenses
 
 
 33
 Ryan argues that the district court violated his right to be free from double jeopardy by first orally pronouncing that no costs would be imposed, but then issuing a written judgment that Ryan would have to pay $83,420. Ryan's argument mischaracterizes the record: the trial judge's statement at a hearing that "I don't know what I'm going to do on costs" is not, as Ryan states it, "an oral pronouncement of sentence."
 
 Sentencing of Ryan
 
 34
 A conviction of possessing an unregistered bomb in violation of 26 U.S.C. § 5861 carries a maximum conviction term of ten years imprisonment. The district court sentenced Ryan to 57 months. The district court's choice of sentence within the guideline range is purely discretionary, and we will not review it on appeal. See United States v. Khaton, 40 F.3d 309, 311 (9th Cir.1994).
 
 Conclusion
 
 35
 The judgment of the district court concerning Raymond D. Cheely is AFFIRMED. The judgment of the district court as to Joseph E. Ryan is AFFIRMED in part and REVERSED in part. We deny the Government's cross-appeal.
 
 
 36
 REINHARDT, Circuit Judge, concurring in part and dissenting in part:
 
 
 37
 I concur in the affirmance of Cheely's convictions and in the reversal of the restitution order, but I would reverse Ryan's conviction on count six--the only count on which he was convicted--for possession of an unregistered firearm. The supplemental instruction invited the jury to convict Ryan on a theory that the government concedes was neither charged in the indictment nor advanced at trial--the possession of "bomb parts." As a result, defense counsel had no opportunity to rebut the new theory or to explain to the jury why he was not guilty of that offense.
 
 
 38
 Count six of the indictment charged Ryan with the knowing receipt and possession of an actual "explosive bomb" in conjunction with his co-conspirators; it alleged that the possession occurred "on or about September 13, 1991"--the date that his co-conspirators allegedly assembled and mailed the bomb, not the date approximately two weeks earlier on which Ryan allegedly possessed the parts and delivered them to Peggy Barnett.[1] Thus, count six alleged only that Ryan constructively possessed the completed bomb by virtue of his co-conspirators' possession of it. Until it sought and obtained the supplemental instruction, the government remained faithful to this theory at trial: it argued only that Ryan constructively possessed the completed bomb by way of his participation in the alleged conspiracy, and that he aided and abetted possession of the completed bomb by his co-conspirators. Prior to the supplemental instruction, the government did not charge Ryan with possessing the bomb parts on September 1, except as an overt act in connection with the conspiracy count of which he was acquitted. Indeed, the government explicitly concedes that a "parts possession" theory was "never a basis of liability advanced at trial or indeed charged in the indictment." Ryan, in turn, freely admitted that he possessed the commercial explosives and blasting caps described in the indictment, but denied that he intended to assist others in using those parts as a bomb. He claimed, instead, that he delivered the explosives to Peggy Barnett so that she could dispose of them. Ryan's defense to count six thus rested entirely upon his lack of intent to assist others in possessing a completed bomb, not on the wholly different type of intent that is required when the charge is the mere possession of the bomb parts themselves. Accordingly, Ryan did not have cause to argue to the jury that the government failed to prove all the essential elements necessary to a conviction based on his possession of the bomb parts and, although he might have had a reasonable argument to that effect, did not make it to the jury.
 
 
 39
 In light of the respective theories of both prosecution and defense, it must have come as a surprise when, after several days of deliberation, the jury asked the district court whether "an explosive on its own" would constitute a firearm, "or do you have to have a bomb to be a firearm." Both the government and the defense appear quickly to have grasped that the jury was inquiring as to whether it could convict Ryan on a theory not before it and on which it had not been instructed--whether the offense could consist of the mere possession of the bomb parts, rather than participation in the possession of a completed bomb; in other words, whether the "firearm" could be just parts and not the completed bomb itself. The government immediately proceeded to urge that the court give an instruction that contained a new, different and expanded definition of "firearm" adopted from 18 U.S.C. § 924(a)(4)(C)--an instruction that advised the jury that explosives and blasting caps alone could constitute a "firearm"--while the defense urged that the district court only repeat the original instruction. The district court gave an edited version of the government's proposed instruction, advising the jury in effect that possession of the bomb parts was sufficient to constitute possession of a firearm, regardless of whether a completed bomb was ever assembled or Ryan ever aided or abetted the other defendants in assembling a completed bomb. It defined a "firearm" as including, inter alia:
 
 
 40
 [A]ny combination of [parts] designed or intended for use in converting any device into a destructive device described above, and from which a destructive device may be readily assembled.
 
 
 41
 Thus, the court invited the jury to convict Ryan of factual conduct that the prosecution had not contended could support a conviction during the trial, and that the defense had no opportunity to persuade the jury was not criminal. As we reiterated once again only last month, "[a] defendant is entitled to know what he is accused of doing in violation of the criminal law, so that he can prepare his defense." United States v. Tsinhnahijinnie, --- F.3d ----, No. 96-10082, 1997 WL 203500, at * 3 (9th Cir. Apr. 24, 1997) (citing Berger v. United States, 295 U.S. 78, 82 (1935)). In my opinion, there can be no question that the giving of the supplemental instruction constituted clear error and requires reversal.[2]
 
 
 42
 The government argues that "the instructions, taken as a whole, permitted [Ryan's] conviction only on the basis of constructively possessing the completed bomb." That is simply not correct. It is clear not only that the government improperly requested and obtained a supplemental instruction that invited the jury to convict Ryan for possession of bomb parts alone, but also that the jury actually convicted him on the basis of this new and improper theory. While the erroneous invitation alone requires reversal even without resort to an examination of the jury verdicts, a comparison of the verdicts demonstrates that the jurors in fact rejected the theory of the case pursued by the government prior to the supplemental instruction and in fact convicted Ryan of the possession of bomb parts.[3] The jury acquitted Ryan of all of the following: aiding or abetting the mailing of the completed bomb (count one); aiding or abetting the making of the completed bomb (count seven); participating in the underlying conspiracy to retaliate against witnesses and others involved in Cheely's initial prosecution (count three); and conspiring to mail, or mailing, an explosive with the intent to kill or injure, and that caused actual injury and death (counts two, four and five). No jury could possibly have concluded that Ryan did not participate in the conspiracy and did not aid or abet the making or mailing of the bomb, yet that he constructively possessed the completed bomb by virtue of his co-conspirators' actions. Rather, the verdicts permit only one inference: the jury convicted Ryan not for aiding and abetting possession of the completed bomb, but simply for his knowing possession of commercial explosives and blasting caps--a fact that was not even at issue at trial.
 
 
 43
 Because I conclude that Ryan was convicted on a theory not charged in the indictment or advanced at trial--and not simply because the jury verdicts were inconsistent--I would reverse the conviction for possession of an unregistered firearm and remand for a new trial on that count.[4]
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The conspiracy count, on which Ryan was acquitted, alleged that "on or about September 1, 1991," Ryan "possessed two tubes of high explosives and two blasting caps" that were retrieved by Peggy Barnett. It then alleged that approximately two weeks later--"on or about September 13, 1991"--Craig Gustafson constructed the bomb from these components, and Peggy Barnett mailed the bomb. Count six, the firearm possession count on which Ryan was convicted, alleged that Ryan possessed an unregistered firearm "on or about September 13, 1991"--the date on which the bomb was assembled and mailed by others, not the date two weeks earlier on which Ryan had possessed the parts. The government's theory regarding count six--at least until the supplemental instruction was given--was that Ryan had aided and abetted the possession of the completed bomb
 
 
 [2]
 Moreover, the fact that the jury acquitted Ryan on all other counts means that it made no finding that would permit us to conclude that the supplemental instruction was harmless error. Carella v. California, 491 U.S. 263, 271 (1989) (Scalia, J., concurring)
 
 
 [3]
 We have recently held that when an erroneous jury instruction may be responsible for an apparent inconsistency between verdicts, we may examine the verdicts and look to the jury's implicit factual findings in order to determine whether the error is responsible for the perceived inconsistency. Westinghouse Elec. Corp. v. General Circuit Breaker & Elec. Supply Inc., 106 F.3d 894, 901-02 (9th Cir.1997). In that case, we held that one of the jury's verdicts was caused by the erroneous instruction, and that reversal of that verdict was required. Id. Here, we need not even rely on the Westinghouse approach because under Carella, the erroneous instruction requires reversal regardless of the inconsistency of the verdicts
 The majority responds that we may not examine the pattern of jury verdicts because, unlike in Westinghouse, the supplemental instruction was not erroneous. The majority also states that only by engaging in "the sort of speculation forbidden by Powell " can we conclude that Ryan was convicted for possession of bomb parts. This response is puzzling. It is clear that the instruction was erroneous: not only did it invite the jury to convict on a theory of liability that was neither alleged nor argued at trial, but it also omitted the special intent element that applies when possession of mere bomb parts is alleged. See infra note 4. Under these circumstances, the giving of the instruction was legal error and could not have been within the district court's "discretion." One need not examine the jury verdicts to realize that the instruction was reversible error. Under Carella, however, it is entirely appropriate to examine the unaffected verdicts in order to determine the actual effect of an erroneous jury instruction, and in this case, the pattern of the verdicts merely confirms that the error requires reversal.
 
 
 [4]
 Ryan also argues that the supplemental instruction omitted the special intent element that applies when the charge involves bomb parts rather than a completed bomb. Because the government insists that the instructions permitted the jury to convict Ryan "only on the basis of constructively possessing the completed bomb," it is not necessary to address this argument. Ryan is, however, correct. The statutory definition of "firearm" includes "a destructive device," and a "destructive device," in turn, includes any "explosive bomb" or "similar device." 26 U.S.C. § 5845(a), (f). The definition of "destructive device," however, specifically excludes "any device which is neither designed nor redesigned for use as a weapon." Id. § 5845(f). Accordingly, we have held that the mere components of a commercial explosive, "absent proof of intent to use such components as a weapon," do not constitute a "destructive device": in order to convict a defendant who possessed such components of violating § 5861(d), the jury must find beyond a reasonable doubt that the defendant intended to use the components as a bomb. United States v. Fredman, 833 F.2d 837, 839 (9th Cir.1987); see also United States v. Ruiz, 73 F.3d 949, 951 (9th Cir.1996) ("Since 'parts' aren't necessarily a weapon, the statute requires intent to use them as a weapon.")
 In this case, because prior to the supplemental instruction the government never advanced the theory that Ryan's possession of the parts alone amounted to possession of an actual "firearm," the defense never had any reason to argue that Ryan lacked intent to use the parts as a weapon, and the jury was not instructed as to the added intent element that must be found when only possession of bomb parts is alleged. Moreover, there was no way for the jury to have inferred the added intent element from the original instructions. The original instruction on "possession" stated only that the defendant must at least have "the power and intention to control" the object in question; it said nothing about the defendant's intent to use or facilitate the use of the object for a particular purpose. Nor did the instruction on aiding and abetting. Indeed, given that possession of bomb parts was "never a basis of liability advanced at trial or indeed charged in the indictment," there is no reason to think that the original jury instructions might have supplied the additional mens rea requirement necessary to convict on the basis of such a theory. Finally, even assuming that the jury could have somehow extrapolated this additional and distinct intent requirement from its initial instructions, it clearly did not do so in this case: having found that Ryan neither participated in the underlying conspiracy nor aided and abetted the mailing of the completed bomb, no jury could also have concluded that he possessed the bomb parts with the intent that they be used as a weapon.
 This kind of error--omission of an element of the offense from the jury instructions--is, of course, per se reversible. United States v. Gaudin, 28 F.3d 943, 952 (9th Cir.1994) (en banc), aff'd, 115 S.Ct. 2310 (1995). Thus, even if we were not required to reverse on the ground that the supplemental instruction incorrectly permitted the jury to convict on the possession of bomb parts, we would nevertheless be required to do so because the instruction failed to inform the jury as to the special intent finding required when a conviction is sought for possession of bomb parts.